Argued October 27, affirmed November 17, 1965

# BAKER ET AL *v.* FEDERAL CROP INSURANCE CORPORATION

407 P. 2d 841

*Edward Berlin,* Washington, D. C., argued the cause for appellant. With him on the brief were John W. Douglas, Assistant Attorney General, Civil Section, Washington, D. C., Sidney I. Lezak, United States Attorney, Portland, and Morton Hollander, Chief, Appellate Section, Washington, D. C.

*Carl G. Helm,* La Grande, argued the cause and filed a brief for respondents.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, GOODWIN, DENECKE, LUSK and SCHWAB, Justices.

SLOAN, J.

After plaintiffs received a judgment for crop losses which the jury had found were covered by a crop insurance policy issued by defendant, the trial court awarded attorney fees to plaintiffs pursuant to ORS 736.325. This appeal only challenges the validity of

the award of attorney fees. Defendant, as a corporation wholly owned by the Federal government, claims that governmental immunity protects it from the attorney fees award. Except for the claim of immunity, the case would be controlled by ORS 736.325.[①]

■ The general rule has been, and we think still is, that "Absent some valid federal law to the contrary, a governmental corporation is not the 'United States' for purposes of suit;* and being given the capacity to sue and be sued is placed 'upon an equal footing with private parties as to the usual incidents of suits in relation to the payments of costs and allowances.' "* (*Footnotes omitted). 6 Moore's Federal Practice (2d ed 1953) § 54.75, page 1343. More will be said of this later. Defendant argues that if even this is the accepted rule, it is not a corporation in the sense intended by the statement of the rule.

It is of first importance to examine the status of defendant as a governmental agency. This can only be found by examination of the creating and amending acts of the Federal Congress. The statutes, as they exist for our purposes are found at Title 7, § 1501

---

[①] "(1) If settlement is not made within six months from the date proof of loss is filed with an insurance company or fraternal benefit society and a suit or action is brought in any court of this state upon any policy of insurance of any kind or nature, including a policy or certificate issued by a fraternal benefit society as defined in ORS 740.010, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such suit or action, then the plaintiff, in addition to the amount that he may recover, shall be allowed and shall recover as part of his judgment such sum as the court or jury may adjudge to be reasonable as attorney's fees.

"(2) If attorney fees are allowed as herein provided and on appeal to the Supreme Court by the defendant the judgment is affirmed, the Supreme Court shall allow to the respondent such additional sum as the court shall adjudge reasonable as attorney fees of the respondent on such appeal."

USCA, et seq. Defendant corporation was initially created in 1938 for the Congressionally declared purpose of improving the economic stability of agriculture by a sound system of crop insurance. It was created as an agency of the Department of Agriculture. All of the capital stock of the corporation was subscribed by the United States. The Board of Directors consisted of the manager of the Corporation, two other persons who were to be employees of the Department of Agriculture and two persons experienced in the insurance business, who were not to be employed by the government. The Corporation, acting through the Board, was given broad powers, similar to powers that are generally assumed by a private corporation. Included is the power to sue and be sued in any court of record of a state having general jurisdiction or in any United States District Court. Though originally confined to the Federal District Courts, a 1947 amendment of the "sue and be sued" provision extended jurisdiction to state courts. This amendment has a significance that will later be mentioned.

Other sections of the act provide for the losses to be insured against; the power of the Board to fix premiums and provisions for adjustment and payment of claims. The last mentioned section, 7 USCA 1508 (c), contains the following language relative to an unpaid claim:

> "In the event that any claim for indemnity under the provisions of this chapter is denied by the Corporation, an action on such claim may be brought against the Corporation in the United States district court, or in any court of record of the State having general jurisdiction, sitting in the district or county in which the insured farm is located, and jurisdiction is conferred upon such

district courts to determine such controversies without regard to the amount in controversy: *Provided,* That no suit on such claim shall be allowed under this section unless the same shall have been brought within one year after the date when notice of denial of the claim is mailed to and received by the claimant."

The quoted language is in addition to the general power before mentioned, to sue and be sued. It is noted that time is the only express limitation found in this authority to sue for an unpaid claim.

In *Keifer & Keifer v. Reconstruction Finance Corp.,* 1939, 306 US 381, 59 S Ct 516, 83 L Ed 784, the opinion by Mr. Justice Frankfurter makes footnote reference to some forty similar corporations, including this defendant, that Congress had created to that date. The question in the case was the immunity of the Regional Agriculture Credit Corporation. The Regional Agriculture Credit Corporations were organized by the Reconstruction Finance Corporation by authority of an Act of Congress. The authorizing Act made no provision for immunity. The particular action was against one of the corporations upon a claim that the corporation had negligently cared for plaintiff's cattle. Even absent an express provision withdrawing immunity, the court held that the corporation was amenable to the action. The court paid particular attention to the fact that in creating the forty corporations the Congress had withdrawn immunity in all but two. The court emphatically held that the immunity of the United States as such did not extend to these corporations. It was said that this policy had endured for more than a hundred years.

In addition to the denial of immunity found in the

*Keifer* case, we think the language of the decision would place defendant in the same category as all of the other government owned corporations.

It is then necessary to find the limits, if any, of Congressional withdrawal of immunity.

In three other particularly pertinent cases the Supreme Court has, with the same emphatic expression, denied immunity to similar government corporations and has imposed no limits on their status as a litigant. One, *Sloan Shipyards Corp. v. United States S. Bd. E. F. Corp.,* 1922, 258 US 549, 42 S Ct 386, 66 L Ed 762, was decided prior to the *Keifer* case. It must be recognized that the Act which created the United States Shipping Board Emergency Fleet Corporation permitted the corporation to be organized under the corporation laws of the District of Columbia. However, as the opinion states the status of the corporation had been enlarged and changed so that it was argued to the Court that it was entitled to the immunity of the sovereign. The court held that: "In general the United States cannot be sued for a tort, but its immunity does not extend to those that acted in its name." 258 US 549, 568, 42 S Ct 386, 388, 66 L Ed 762, 768. The opinion has become recognized as a significant statement of the limitations of the sovereign immunity doctrine.

*Federal Housing Administration v. Burr,* 1940, 309 US 242, 60 S Ct 488, 84 L Ed 724, held that the FHA was subject to garnishment proceedings issued by a state court. In a unanimous opinion by Mr. Justice Douglas the court, in language important to the case before us, said:

"* * * Hence, when Congress established such an agency, authorizes it to engage in commercial

and business transactions with the public, and permits it to 'sue and be sued,' it cannot be lightly assumed that restrictions on that authority are to be implied. Rather if the general authority to 'sue and be sued' is to be delimited by implied exceptions, it must be clearly shown that certain types of suits are not consistent with the statutory or constitutional scheme,* that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the 'sue and be sued' clause in a narrow sense. In the absence of such showing, it must be presumed that when Congress launched a governmental agency into the commercial world and endowed it with authority to 'sue and be sued,' that agency is not less amenable to judicial process than a private enterprise under like circumstances would be." (*Footnote omitted). 309 US 242, 245, 60 S Ct 488, 490, 84 L Ed 724, 728, 729.

*Reconstruction Finance Corporation v. J. G. Menihan Corp. et al,* 1941, 312 US 81, 61 S Ct 485, 85 L Ed 595, involved the imposition of court costs against the RFC. In another opinion by Chief Justice Hughes for a unanimous court, relying on the cases just cited, again held that:

"* * * We perceive no reason for holding that petitioner may avail itself of the judicial process in accordance with the authority conferred upon it and escape the usual incidents of that process in case its assertions of right prove to be unfounded. On the contrary, we think that the unqualified authority to sue and be sued placed petitioner upon an equal footing with private parties as to the usual incidents of suits in relation to the payment of costs and allowances." 312 US 81, 83, 61 S Ct 485, 487, 86 L Ed 595, 598.

Because of what is to follow it appears important here to also mention that the opinion also stated:

> "Rule 54 (d) of the Rules of Civil Procedure provides that 'costs against the United States, its officers, and agencies shall be imposed only to the extent permitted by law.' This provision was merely declaratory and effected no change of principle." 312 US 81, 83, 61 S Ct 485, 486, 85 L Ed 597.

The Supreme Court decisions cited would end this case if it were not for a provision inserted in a general revision of the Federal Judicial Code made in 1948. The official title given to the revision was United States Code Judiciary and Judicial Procedure. For convenience we refer to it as the Judicial Code. In that year Congress, by that revision, culminated several years study of the Judicial Code. See Report of House of Representatives Committee on the Judiciary, United States Code Congressional Service, 1948, Title 28, page 1692, et seq. As part of that revision that Act gathered into Section 2412, certain provisions previously scattered throughout the Code, relating to costs allowable against the United States. 28 USCA § 2412 (a) is the particular subsection we are concerned about. It reads:

> "The United States shall be liable for fees and costs only when such liability is expressly provided for by Act of Congress."

The Revisor's Notes, made a part of the House Committee report just mentioned states that:

> "Subsection (a) is new. It follows the well-known common-law rule that a sovereign is not liable for costs unless specific provision for such liability is made by law. This is a corollary to the rule that a sovereign cannot be sued without

its consent." United States Code Congressional Service, supra, page 1918.

■ This presents the problem: Did Congress by enacting subsection (a) overrule the decisions of the Supreme Court that we have discussed? We think it did not.

■ There are various considerations that prompt us to reach this conclusion. The strongest is that the Supreme Court had made it unequivocally clear that the immunity of the United States for costs and other incidents of litigation did not extend to its corporate agencies. If Congress had intended to change this rule it could have easily said so in as many words. In another related section of the code, 28 USCA § 2408, Congress did recognize the distinction between the United States and its agencies. That Section provides that security for costs or damages shall not be "* * * required of the United States, any department or agency thereof * * * on the issuance of any process or the institution or prosecution of any proceeding." And that any costs taxable shall be paid from the contingent fund of the department or agency involved. Title 28 USCA § 451 of the Code defines a "department" and an "agency" as separate creatures and identities. The definition of agency in Section 451 includes a corporation in which the United States has a proprietary interest. It is difficult, if not impossible to believe that a Code which was the product of many years of research and revision by many different committees and learned people would have overlooked such an important distinction. Particularly, a distinction that the Supreme Court had for so long expounded.

Of comparative significance was the 1944 amend-

ment to the Federal Crop Insurance Corporation Act —7 USCA 1508 (c) by which Congress extended the right to sue and be sued and to the state courts. The Congress, in 1944, must have been fully aware of the effect of such an amendment and must have intended the result. *Federal Housing Administration v. Burr,* supra, 309 US 242, 245, 60 S Ct 488, 490, 84 L Ed 728, 729.

■ " 'It is a well-known rule or canon of construction that in construing an Act of Parliament one ought to take into account the state of the law and of judicial decisions at the time the Act is passed.' " Beal, Cardinal Rules of Legal Interpretation, (2d ed 1908) page 365. Quoting *Yorkshire Insurance Co. v. Clayton,* 1881, 8 QBD 421, at page 426. For a more modern statement of the rule see 50 Am Jur, § 321, page 312, 313.

It is also important that the Supreme Court in the *Menihan* case had said, as we above quoted, that a provision similar to 28 USCA § 2412 (c) of the Federal Rules of Civil Procedure (Rule 54(d)) was "merely declaratory and effected no change in principles."

In a later case, *Small Business Administration v. McClellan,* 1960, 364 US 446, 81 S Ct 191, 5 L Ed2d 200, the court distinguished the *Shipping Board* case and the *Menihan* case, but did not indicate any lack of the validity of the holding in the *Menihan* case. The *Small Business Administration* case involved the right of that agency to assert the governmental priority for preference in a bankruptcy proceeding.

Our decision is supported by *United States v. Pressnell,* (USDC Ed Tenn 1963) 219 F Supp 727. The case involved the right to tax costs against the Tennessee Valley Authority in a condemnation proceeding. The

TVA had sued in the name of the United States. The court, relying on *Menihan* and other cases above cited, held that the authority granted to the TVA to sue and be sued placed it on a par with private parties as to the unusual incidents of suit. The court held that 28 USCA § 2412 (a) did not alter this result. On appeal this case was reversed. *United States v. Pressnell* (CCA 6th 1964), 328 F2d 580, 581. However, the basis of the reversal was that the United States, not the TVA was the real party in interest. The court said that the TVA Act provided that condemnation proceedings of the TVA were to be in the name of the United States and that title to the property condemned "shall be" taken in the name of the United States, therefore, the United States was the party actually involved. The circuit court recognized that if the agency had been the real party in interest the authorities relied on by the District Court, and by this opinion, would have been valid.

In *Maguire v. Federal Crop Ins. Corp.*, (CA 5th 1950), 181 F2d 320, without reference to 28 USCA § 2412 (a) held that the same defendant now before us was subject to costs unless it made a proper offer of judgment as required by Rule 68 of the Federal Rules of Civil Procedure.

One state case has been cited, *Federal Crop Ins. Corp. v. De Cell,* 1955, 222 Miss 643, 76 So2d 826. In an opinion referring to the cases we have cited, and others of similar import, it was held that the crop insurance corporation was obliged to pay interest on a judgment rendered against it.

In *United States v. Ullman,* (USDA Pa 1953) 115 F Supp 211, the court awarded attorney fees and costs in favor of an interpleader against an adverse claim of

the United States. The case is not apposite except that the strict interpretation given 28 USCA § 2412 (a) is in accord with the historical limitations imposed by the Federal Courts on the claim of immunity.

Nor do we overlook the authoritative statement of Professor Moore, before mentioned (at 6 Moore (2d ed) page 1343) that costs can be taxed against an agency in litigation, but not against the United States.

We think, therefore, that our conclusion that 28 USCA § 2412 (a) does not control decision in this case is well fortified. Nothing persuasive to the contrary has been cited to us.

■ Some contention is made that the cases relating to costs are not relevant in respect to attorney fees. The attempted distinction is not valid. The effect of the withdrawal of immunity, as stated in part by the quote from *Menihan,* would be the same when, as here, attorney fees are treated as the same incidence of a suit as costs would be. The attorney fees allowable by the Oregon statute, ORS 736.325, are held to be costs. *Spicer v. Benefit Ass'n of Ry. Emp.,* 1933, 142 Or 574, 600, 21 P2d 187, 90 ALR 517. "Such a provision [ORS 736.325] of the Oregon law, by way of costs, is an incident of the remedy and is controlled by the law of the forum." *Horwitz v. New York Life Ins. Co.,* (CCA 9th 1935) 80 F2d 295, 302. The statute itself says that the attorney fees shall be awarded as a part of the judgment.

Defendant also argues that if it is subject to ORS 736.325 it would, therefore, be subject to the General Insurance Laws regulating all insurance companies. The argument is defective. By the definition of the General Insurance Law found in ORS 736.005 (2), ORS 736.325, is not a part of the General Insurance Law.

The first comprehensive insurance code of Oregon was enacted by Chapter 203, Oregon Laws, 1917, "* * * it thoroughly covers the field of insurance regulation and supervision." *Lovejoy v. Portland,* 1920, 95 Or 459, 461, 188 P 207, 208. ORS 736.325 was first enacted by Chapter 110, Oregon Laws 1919, without reference to the insurance code as such. This was for the obvious reason that the enactment was unrelated to state regulation and supervision of insurance companies.

It clearly follows that subjecting defendant to ORS 736.325 does not mean that it could otherwise be regulated by the General Insurance Law. For example, for an insurance company to subject itself to the payment of attorney fees by litigating a contested claim would not also subject the company to the payment of a penalty as provided by ORS 736.990 (8) which prescribes a penalty for violation of the General Insurance Laws.

■ It was also suggested that defendant is not an insurance company as contemplated by ORS 736.325. When stripped of its immunity, defendant's insurance contract meets the ORS 736.005 definition that "Insurance is a contract whereby one undertakes to indemnify another against loss, damage or liability arising from an unknown or contingent event, whereby the insured or his beneficiary suffers loss or injury."

Since the allowance of attorney fees, when permitted by the statute, is an incidence of enforcing an insurance contract in Oregon, defendant is amenable to it. In *Standard Oil Co. v. United States,* 1925, 267 US 76, 45 S Ct 211, 69 L Ed 519, Mr. Justice Holmes commented: "When the United States went into the insurance business, issued [marine war risk] policies

in familiar form, and provided that, in case of disagreement, it might be sued, it must be assumed to have accepted the ordinary incidents of suits in such business." Accordingly, interest was allowed on the judgments in the case. It appears to us that the trial court correctly augmented the judgment by the allowance of attorney fees.

The judgment is affirmed.