PIERCE, WILLIAM C., Associate Judge.
This is an appeal by Federal Crop Insurance Corporation, defendant below, from a final judgment entered by the Circuit Court for Indian River County, after trial before the court without jury of a complaint brought by Deerfield Groves Company, a corporation, plaintiff below, to recover upon a crop insurance policy. Appellant will be hereinafter referred to as'the company or defendant company, while appellee will be referred to as Deerfield.
On December 20, 1963, Deerfield brought suit against the defendant company in five counts, alleging refusal of the company to pay Deerfield for loss incurred by Deer-field occasioned by a severe weather damage to its grapefruit crop, which Deerfield contended was covered by a policy of crop insurance in force between the two parties at the time of the damage.
The first count of Deerfield’s complaint alleged that on April 13, 1963, a severe hailstorm destroyed approximately three-fourths of the 1963 grapefruit crop then growing on the trees on Deerfield’s extensive citrus groves, resulting in a loss t© Deerfield of not less than $75,000.00; that at the time of said calamity Deerfield was insured by defendant company against such loss damage by virtue of a “continuous and continuing contract or policy of insurance” *626 issued originally in July, 1960, whereby Deerfield was insured by defendant company in the amount of $250.00 per acre “against unavoidable loss due to freeze, ihail, hurricane or tornado, during the crop year 1960 and succeeding crop years”; ■.that the initial premium was paid at the time the policy was first taken out in 1960; ■that under a provision of the policy, defendant company reserved the right to change the premium rate for each crop year subsequent to 1960 “provided notice thereof be ■mailed to plaintiff [Deerfield] or placed on file in defendant’s county office” by March 1st of each ensuing crop year, which commenced each April 1st; that during the ■crop years of 1960, 1961 and 1962, the premiums were duly paid as so fixed, no losses were incurred, and everything went along smoothly between the parties; that on February 27, 1963, defendant company notified Deerfield by mail that defendant desired from Deerfield “the actual citrus .acreage that will be insurable this year ¡[1963]” and a questionnaire was enclosed which Deerfield was to fill out and mail back to the company “by March 10” containing “accurate data with respect to each •variety” of citrus which would be insured and which information would “be used as .a basis for establishing premium and liability under the policy”; that Deerfield replied to such request by returning the completed questionnaire by mail to defendant •company on March 9, 1963; that defendant company did not notify Deerfield of the amount of such premium due for the 1963 crop year until on or about May 9, 1963, on which date Deerfield received notice thereof through the mail from the •company; that on May 13, 1963, Deer-field mailed to the company a check in payment of said premium in the amount •so advised by the May 9th letter but the •company declined to accept the check and returned it to Deerfield; that Deerfield, at all times both before April 1, 1963, and thereafter until May 9, 1963, stood ready to pay the company whatever amount of premium the company should fix for the current crop year, but Deerfield was not advised thereof until May 9, 1963; that in the meantime, on April 13, a hailstorm had destroyed most of Deerfield’s current grapefruit crop then on the trees, and Deerfield on the same day had so notified defendant company in writing; that at Deerfield’s request the company had its adjuster inspect Deerfield’s grove, whereupon the company paid Deerfield for “the unharvested portion of the 1962 crop of grapefruit” but not the 1963 crop; and that on April 18, 1963, Deerfield requested of the company in writing the necessary forms for filing claim and proof of loss for the 1963 grapefruit crop but the company ignored such request and refused to furnish the forms, denying any liability under the policy. Deerfield claimed full recovery from defendant company for the hailstorm loss under the policy, together with attorneys’ fees for the services of Deerfield’s attorneys.
Counts II, III, IV and V of the complaint re-averred most of the material allegations set forth in Count I, but contended that the company was estopped to deny liability under the policy because of the “pattern and course” of the company’s dealings with Deerfield over the preceding years 1961 and 1962 and also in 1963 up to the time of the loss, in the several respects detailed under Count I as aforesaid.
The company answered, admitting the basic facts of the complaint but denying Deerfield’s conclusions therefrom, and averring their own conclusions from the facts. The answer denied that the company was under any obligation to notify Deerfield of the amount of the premium in time for it to be paid before April 1, 1963; averred that the 1963 crop was not insured because of non-payment of the current premium; denied that any notices were necessary from the company to Deer-field as to the amount of premium; denied that filing of proof of loss had been waived; denied that its conduct had been fraudulent or deceitful (as Deerfield had alleged under its Count V of the complaint); denied that it was estopped to deny liability under the policy; and denied that it was liable *627 for attorney’s fees. By a “Third Defense” the company averred by way of conclusions that it was “a corporation created by Act of Congress as an agency of the United States” within the U. S. Department of Agriculture and was authorized to carry out a “plan of experimental insurance on agricultural commodities”; that the company was under no duty to send a premium notice and such notice was not necessary for Deer-field to ascertain the amount of premium; that “[o]n or before March 1, 1963, the contract, coverages, and premium rates were on file in the Lakeland office which served as the county office of the defendant for Indian River County * * * and were available for inspection” by Deerfield; that “no agent or employee of the defendant had authority to alter the terms of the contract” of insurance (which was in answer to the averment in the complaint regarding the letter dated February 27, 1963, requesting citrus acreage information for use in establishing the current premium) ; and that “as an agency of the United States it cannot be estopped by the unauthorized acts of its agents.”
The trial was before the court without a jury, and the facts were without material dispute, developing substantially as the facts were alleged in the pleadings. But the conclusions and legal contentions of the parties were at sharp variance.
After trial, the court entered a final judgment in favor of Deerfield for the amount of $61,425.00 as damages for a 73% loss of the 1963 crop, less $8,482.50 constituting that year’s policy premium, to which interest from June 10, 1963, to the date of the final judgment, April 27, 1965, was added in the sum of $5,971.55, and also an adjudged attorney’s fee of $12,500.-00; or an overall total of $71,414.05, for which execution was ordered to be issued. Said judgment discussed all issues of the case in a most lucid manner and made informal findings and conclusions. Inasmuch as the contentions of the company advanced here upon appeal are the same as were urged at the trial level, and because we agree with the findings and conclusions so ably expressed by the Circuit Judge, Hon. D. C. Smith, we adopt as a part of our opinion his “Final Judgment” in toto (with one exception which will be hereinafter noted), omitting references, therein made to the record and exhibits before the trial court and other interpolations, not necessary here. Such “Final Judgment” is as follows:
“This cause has heretofore come on for trial before the Court without a jury.
“The Court has considered the testimony and other evidence admitted, together with briefs filed by the respective parties, and finds therefrom that in July of 1960, the defendant issued to the plaintiff a continuous citrus crop insurance policy, No. 59-031-60-14, insuring 390 acres of the plaintiffs grapefruit groves against certain specified losses, including hail storms, in the amount of $250.00 per acre.
“The application for the policy acknowledges payment of the premium due-for the crop year 1960. For the crop-years 1961 and 1962, defendant notified' plaintiff by mail of the total amount of premium due in ample time for plaintiff to pay same before April 1, 1961, and' April 1, 1962, respectively. The defendant, by written notice dated February-27, 1963, notified plaintiff that:
“ ‘You are aware of the fact that the 1963 policy year under the Citrus Crop-Insurance Program begins on April' 1, and we are anxious to find out from you prior to the preparation of premium notices of the actual citrus acreage that will be insurable this year.
“ ‘In order to assist us in providing you with the maximum protection under the policy, a questionnaire and return envelope is enclosed for your convenience in furnishing this office with variety and acreage data pertaining to your grove operations.
*628 " ‘It is very important that accurate data with respect to each variety be entered on the enclosed form since this information will he used as a basis for establishing premium and liability under the policy.
“ ‘Your cooperation in complying with this request by March 10 will be greatly appreciated.’
■“The plaintiff complied with defendant’s request by entering the applicable variety .and acreage data on said questionnaire and returning same to defendant by mail on March 9, 1963. At all times between March 1, 1963, and April 1, 1963, and thereaftex-, plaintiff stood ready, able and willing to promptly pay defendant the total premium due under the policy for the 1963 crop year commencing April 1, 1963, upon being notified by the defendant of the amount thereof, but defendant failed to notify plaintiff of the amount of such premium due in time to permit the plaintiff to pay same before April 1, 1963. The defendant did not notify plaintiff of the amount of premium due for the 1963 crop year until May 9, 1963, when defendant mailed its notice of premium due, dated March 1, 1963, but not mailed by the defendant to plaintiff until May 9, 1963. On May 13, 1963, plaintiff mailed defendant a check in payment of premium for 1963, but defendant declined to accept same and returned it to the plaintiff.
“On April 13, 1963, the plaintiff’s citrus grove acreage covered by the policy was struck by a hail storm, destroying 73% of the 1963 crop of grapefruit growing on the trees on said acreage. The plaintiff reported such loss to the defendant and the defendant paid plaintiff’s loss to its 1962 matured citrus crop on the trees on April 13, 1963, but denied any liability for plaintiff’s loss to its 1963 citrus crop on the trees on April 13, 1963, asserting that no insurance was in force covering the 1963 citrus crop on the trees on April 13, 1963, due to non-payment of premium for 1963.
“The policy issued by the defendant to the plaintiff is a continuous policy. The plaintiff asserts that the policy originally issued and delivered to plaintiff is the policy which was in existence between the plaintiff and the defendant for the crop year 1963 and that it is the policy plaintiff is suing upon. The defendant, by its answer, denies that such policy is the policy that was in existence between the parties for the crop year 1963 and asserts that the policy which was in existence between the parties for the crop year 1963 is the policy attached to its answer.
“The original policy between the parties, paragraph 20, provides:
“ ‘The Corporation reserves the right to change the premium rate(s), insurance coverage (s), and other terms and provisions of the contract from year to year. Notice of such changes shall be mailed to the insured or placed on file in the county office by the March 1 preceding the beginning of the crop year for which such changes are to become effective and such mailing or filing shall constitute notice to the insured. Failure of the insured to cancel the contract as provided in section 19 shall constitute his acceptance of any such changes. If no notice is given, the terms and provisions of the contract for the prior year shall continue in force.’
“The testimony shows that changes were made in the policy and that notice of such changes was placed on file in the county office by the March 1 preceding the beginning of the crop year for which such changes were to become effective. The policy in evidence marked defendant’s Exhibit 8B, together with applicable endorsements, is the policy which was in existence between the parties for the crop year 1963. The policy in existence *629 between the parties for the crop year 1963, paragraph 6, provides:
“ ‘The Corporation reserves the right to change the insurable crops, premium rates, guaranteed production, amounts of insurance per acre, and other terms and provisions of the contract, from year to year. Any changes in the contract, with respect to any crop shall be mailed to the insured or placed on file in the county office at least 15 days prior to the cancellation date for that crop, preceding the crop year for -which the changes are to become effective, and such mailing or filing shall constitute notice to the insured. Failure of the insured to cancel the insurance with respect to any crop for which changes are made as provided in section 15 shall constitute his acceptance of any such changes.’
-“It is uncontroverted that defendant -mailed premium notices to the plaintiff ■in 1961 and 1962 in time for plaintiff to -pay the premiums by April 1 in each -year, that defendant mailed [the letter ,of February 27, 1963], that plaintiff .complied therewith, that defendant did •not notify plaintiff of the amount of -premium due for the 1963 crop until .May 9, 1963, when defendant mailed jits notice ,of premium due, dated March T, 1963, 'but not mailed by the defend;ant to plaintiff until May 9, 1963, that .on Mayilo, :1963, plaintiff mailed defend- . ant a check 'in payment of premium for 1963, -and -that plaintiff stood ready, .able-and-willing to promptly pay defendant the-premium due under the policy for the 1963 .crop year by April 1, T963, upon -receipt of premium notice from the defendant in time to permit • the plaintiff -tp ,do so. Under these facts the defendant is estopped to deny liability ..under the policy for non-payment of premium.
“ ‘By the -,weight of authority and by what is the more equitable view, the - necessity -for . giving notice of the amount and date on which a premium is due, may be based upon the practice or usage of the particular insurer. Accordingly, when an insurer uniformly follows the practice of giving notice of payments for such a length of time as leads those insured to believe notice will be given, it cannot declare a forfeiture without giving notice or without previously advising the persons who have relied upon receiving notice that the custom will be or has been discontinued and, consequently, that a payment within a reasonable time after the premium becomes due, is sufficient where custom has been to send notice and none is given.’ Couch on Insurance 2d, Section 30:128, and cases cited.
“ ‘In the case of insurance on the mutual or other plan where the premiums or assessments may be such that the insured cannot know the amount he will be called upon to pay unless notified thereof, it is usually conditioned that notice of premiums or assessments and the due date thereof shall be given the insured.’ Couch on Insurance 2d, Section 30:123.
“ ‘Where premiums of insurance policy are variable and their precise amount is determined by conditions wholly within the knowledge of the insurer, the giving of notice is an essential prerequisite to a default for non-payment of premium.’ 29 Am.Jur., Section 524.
“The defendant is a corporation created under the provisions of the Federal Crop Insurance Act (7 U.S.C., § 1503). The act specifically provides that suits on contested insurance claims may be brought against the Federal Crop Insurance Corporation, either in a State Court of general jurisdiction or any Federal District Court (7 U.S.C., § 1508(c); see also 7 U.S.C., § 1506(d)). In addition to conferring broad powers upon the defendant, including the power to sue and *630 to be sued, it is to be noted that Congress conferred upon the defendant ‘all such incidental powers as are customary in corporations generally.’ (7 U.S.C., § 1506(j)). The defendant is not immune from the payment of interest. When the defendant went into the insurance business, it must be assumed to have accepted the ordinary incidents of suits in such business.”
(At this point legal authorities are discussed as to liability of defendant for interest, which will be here omitted, as per our subsequent holding.)
“Defendant’s actions in sending premium notices to the plaintiff for 1961 and 1962 in ample time for plaintiff to pay the same before April 1 in each year, its sending its letter dated February 27, 1963, to the plaintiff, stating that ‘the plaintiff was aware of the fact that the 1963 policy year under the citrus crop insurance program begins on April 1, and we (the defendant) are anxious to find out from you prior to the preparation of premium notices the actual citrus acreage that will be insured this year and asking the plaintiff to assist them in sending in certain data by March 10, 1963, as this information will be used as a basis for establishing premium and liability under the policy,’ the plaintiff’s complying therewith, the defendant then waiting until May 9, 1963, to mail a premium notice and when it mailed the notice, dating the premium notice March 1, and when a loss was sustained by the insured in the interim, the defendant then denying liability thereof because the premium for 1963 had not been paid prior to April 1, 1963, amounts to a constructive fraud committed by the defendant upon the plaintiff (37 C.J.S., page 211, Fraud— Section 2(c) Constructive Fraud), and the plaintiff is entitled to recover interest from the defendant (37 C.J.S., page 465, Fraud, Section 141(a) and page 469 (g) Interest). To do otherwise would permit the defendant to profit from and to obtain an unjust enrichment from its-own wrong and would be unconscionable and something which the law will not countenance. The provision in the policy, paragraph 12(a), ‘That in no-event shall the Corporation be liable for interest or damages in connection with' any claim for indemnity,’ cannot be invoked by the defendant to protect it from-, damages sustained by the plaintiff due-to defendant’s constructive fraud.
“The plaintiff promptly advised the-defendant of plaintiff’s losses and requested the defendant to furnish necessary forms for plaintiff to make its proof' of loss and claims under the policy. The • defendant advised the plaintiff that it denied any liability for loss under the-policy for the 1963 crop year.
“The District Director of the defendant testified that had the notice of premium due been sent to the plaintiff in sufficient time prior to April 1, 1963, to • permit the plaintiff, if it had acted' promptly, to have paid the premium due according to such notice prior to April' 1, 1963, the plaintiff would have been-covered for its average per cent of loss-for the acreage that was damaged in excess of 10% (TR. 176-179).
“The plaintiff is entitled to a judgment against the defendant in the sum of $61,-425.00 as damages for a total loss of an-average per cent of damage of 73% or-63% in excess of 10% of its 1963 grapefruit crop on the acreage covered by the • policy (paragraph 10(b) of defendant’s-Exhibit 8A in evidence), less $8,482.50, the premium payable for the 1963 crop - year, leaving a net damage in the sum of $52,942.59, plus interest thereon from-6-10-63 to the date hereof at the rate of' 6% per annum in the sum of $5,971.55,. together with an attorneys fee in the • sum of $12,500.00, which sum the Court. finds and determines to be a reasonable-attorneys fee to be allowed the plaintiff’s attorney hereip, making a total: *631 sum of $71,414.05 due the plaintiff from the defendant as of this date.
“Upon consideration, it is thereupon
“ORDERED AND ADJUDGED:
******
“3. That Deerfield Groves Company, a corporation, do have and recover of and from the Federal Crop Insurance Corporation, a corporation, the sum of $61,425.00 as damages for a total loss of an average per cent of damage of 73%, or 63% in excess of 10% of its 1963 grapefruit crop on the acreage covered by the policy, less $8482.50, the premium for the 1963 crop year, leaving a net damage in the sum of $52,942.50, plus interest thereon from 6-10-63 to the date hereof, at the rate of 6% per an-num, in the sum of $5,971.55, together with an attorney’s fee in the sum of $12,500.00, making a total of $71,414.05 due the plaintiff from the defendant, together with costs incurred herein to be taxed by the Court, for which sum let execution issue.”
The one item with which we must disagree with the trial judge is in the matter of interest, which was based largely upon the rather vague premise that the company was guilty of “constructive fraud”. We cannot go along with the trial judge in that finding and conclusion. Whatever may have been the derelictions of the company and its agents (and the company was certainly responsible for the acts and doings of its agents within the scope of the company’s business), it cannot be attributed to, and we do not so find from the record here, any fraud, either actual or constructive, in the company’s dealings with Deerfield; and without such element of “constructive fraud”, it is our view that interest on the claim is not allowable against the defendant company. Absent the element of constructive fraud, the rule seems to be that interest is not chargeable generally against a governmental instrumentality such as defendant company. United States v. Alcea Band of Tillamooks, 1951, 341 U.S. 48, 71 S.Ct. 552, 95 L.Ed. 738; United States v. Worley, 1930, 281 U.S. 339, 50 S.Ct. 291, 74 L.Ed. 887.
Regarding the trial court’s requirement that an attorney’s fee be paid by defendant company under the provisions of F.S. Sec. 627.0127 F.S.A., we find that a like ruling was made under somewhat similar circumstances in Baker v. Federal Crop Insurance Corporation, 1965, 241 Or. 609, 407 P.2d 841. At 384 U.S. 938, 86 S.Ct. 1459, 16 L.Ed.2d 538, the Supreme Court of the United States granted writ of cer-tiorari to the Supreme Court of Oregon to review the decision, but on September 9th, 1966, the writ was dismissed “under Rule 60”,[1] See 385 U.S. 801, 87 S.Ct. 10, 17 L.Ed.2d 48.
Until the rule announced in Baker v. Federal Crop Insurance Corporation, supra, is changed by higher authority, we will follow it.
The final judgment appealed from is thereupon affirmed as to all portions thereof except the inclusion therein of interest in the amount of $5,971.55, which should be eliminated, leaving the amount of the judgment to be $65,442.50, for which an amended judgment should be entered up by the trial court, allocated as aforesaid.
Affirmed, in part, and reversed, in part.
WALDEN, C. J., and WHITE, JOSEPH S., Associate Judge, concur.

. Rule 60 provides for dismissal of petitions for writs of certiorari upon agreement of counsel or upon motion to dismiss by the petitioner.