Argued and submitted March 9, decision of Court of Appeals reversed; supplemental judgment of circuit court reversed, and case remanded to circuit court for further proceedings September 14, petition for reconsideration denied November 21, 2012

Carla D. MORGAN,
*Petitioner on Review,*

*v.*

AMEX ASSURANCE COMPANY,
*Respondent on Review.*

(CC 0710-11736; CA A141913; SC S059655)

287 P3d 1038

Dean Heiling, Heiling Dwyer & Associates, Portland, argued the cause and filed the briefs for petitioner on review.

Cliff J. Wilson, Smith Freed & Eberhard, P.C., Portland, argued the cause and filed the brief for respondent on review. With him on the brief was Ryan J. McLellan.

Meagan A. Flynn, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

Seth H. Row, Parsons Farnell & Grein, LLP, Portland, filed the brief for *amici curiae* Ash Grove Cement Company,

the Port of Portland, Northwest Natural Gas Company, Associated General Contractors—Oregon Columbia Chapter, Oregon Home Builders Association, and Oregon Concrete and Aggregate Producers Association. With him on the brief was Michael E. Farnell.

Before Balmer, Chief Justice, and Durham, De Muniz, Kistler, Walters, and Linder, Justices.**

KISTLER, J.

---

** Landau, J., did not participate in the consideration or decision of this case.

**KISTLER, J.**

ORS 742.061 authorizes an award of attorney fees to an insured who prevails in "an action * * * in any court of this state upon any policy of insurance of any kind or nature * * *." A later enacted statute, ORS 742.001, provides that ORS chapter 742 "appl[ies] to all insurance policies delivered or issued for delivery in this state * * *." The question in this case is whether ORS 742.001 precludes awarding attorney fees to an insured who prevails in an action in an Oregon court on an insurance policy that was issued for delivery and delivered in the State of Washington. The trial court concluded that it did and entered a supplemental judgment to that effect. The Court of Appeals affirmed. *Morgan v. Amex Assurance Co.*, 242 Or App 665, 259 P3d 39 (2011). We allowed plaintiff's petition for review and now reverse the Court of Appeals decision and the trial court's supplemental judgment and remand for further proceedings.

While plaintiff was living in Vancouver, Washington, she applied for and received an automobile insurance policy from defendant. Defendant issued the policy for delivery in Washington and delivered it to plaintiff there. One morning, plaintiff was driving her car south on the Glenn Jackson Bridge over the Columbia River when another driver hit her car. The other driver had no insurance; however, the policy that defendant had issued plaintiff provided uninsured motorist coverage. Plaintiff filed a claim under her policy, which defendant denied on the ground that the circumstances of the accident came within an exclusion to the uninsured motorist coverage.

Plaintiff then filed this action to recover on her policy.[1] After the trial court denied defendant's motion for summary judgment, defendant offered to pay plaintiff "$85,000 * * * exclusive of any costs, disbursements, and attorney fees, if any, that may be recoverable." Plaintiff accepted that offer and petitioned for attorney fees pursuant to ORS 742.061. That statute provides, in part,

"[I]f settlement is not made within six months from the date proof of loss is filed with an insurer and an action

---

[1] Defendant does not dispute that plaintiff properly filed this action in Oregon.

is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon."

ORS 742.061(1). Defendant objected to plaintiff's attorney fee request. It argued that, as a result of ORS 742.001,[2] ORS 742.061 applies "only * * * to policies of insurance delivered or issued for delivery in Oregon." Because the policy on which plaintiff brought her action had not been "delivered or issued for delivery" in this state, defendant reasoned that ORS 742.001 barred plaintiff from recovering attorney fees under ORS 742.061.

The trial court agreed with defendant and entered a supplemental judgment awarding plaintiff costs but no fees. On appeal, the Court of Appeals noted that the legislature enacted ORS 742.001 after it had enacted ORS 742.061. The court concluded that, in enacting ORS 742.001, the legislature intended to limit the scope of ORS 742.061. The court reasoned,

"[B]y its terms and from its inception, ORS 742.001 was intended to circumscribe the application of ORS 742.061. There is nothing to suggest that the legislature was somehow unaware of that effect or intended to exempt the attorney fees provision from the scope limitation in what is now ORS 742.001. The unavoidable conclusion is that ORS 742.061 applies only to insurance policies issued or delivered in Oregon."

*Morgan*, 242 Or App at 670-71. We allowed plaintiff's petition for review to consider whether the Court of Appeals correctly interpreted the relationship between ORS 742.001 and ORS 742.061.

---

[2] ORS 742.001 provides:

"This chapter and ORS chapters 743 and 743A apply to all insurance policies delivered or issued for delivery in this state except:

"(1) Reinsurance.

"(2) Wet marine and transportation insurance policies.

"(3) Surplus lines insurance policies."

As the Court of Appeals recognized, the issue in this case turns on whether the legislature intended to limit the scope of ORS 742.061 when it enacted ORS 742.001. In resolving that issue, we begin by discussing briefly the backdrop against which the 1919 legislature enacted the statute that is now codified as ORS 742.061, the enactment of that statute, its codification, and its interpretation before the adoption of ORS 742.001 in 1967. We then address whether, in enacting ORS 742.001, the 1967 legislature intended to limit awards of attorney fees under ORS 742.061 to actions on insurance policies issued for delivery or delivered in Oregon.

Oregon has regulated the business of insurance for over 120 years. In 1887, the legislature first prescribed the terms on which domestic and foreign insurers could engage in the business of insurance in this state. *See* Or Laws 1887, pp 118-25.[3] Thirty years later, in 1917, the legislature enacted the first comprehensive insurance code. *See* Or Laws 1917, ch 203; *Lovejoy v. Portland*, 95 Or 459, 460-61, 188 P 207 (1920). As the court explained in *Lovejoy*, the 1917 Act:

"regulate[d] the conditions under which [the] business [of insurance] may be commenced and the manner in which it may be conducted. It regulate[d] the organization of the insurance department, and it prescribe[d] the jurisdiction and define[d] the powers of the state insurance commissioner. It deal[t] with the mode of organizing local companies, the admission of foreign companies, the nature of the investments of local and foreign companies, and examinations and reports of companies. It contain[ed] various provisions to insure the solvency of insurance companies, and it afford[ed] means for excluding companies of impaired or doubtful solvency. * * * It specifie[d] the kinds of insurance which various companies may write, and it designate[d] the form and manner in which policies may be written. * * * It furnishe[d] safeguards against excessive or unjust premium rates, and it contain[ed] prohibitions

---

[3] The 1887 statute provided that domestic and foreign insurers could engage in the business of insurance within Oregon only if the Secretary of State, acting as the *ex officio* Insurance Commissioner, first licensed them to do so. Or Laws 1887, pp 118-19, §§ 1, 4. The 1887 statute focused primarily on the minimum capital requirements for domestic and foreign insurers and similar prerequisites for engaging in the business of insurance in Oregon. *See id.* §§ 5, 8, 11, 12, 13.

against combinations between companies or agents for any purpose detrimental to the public welfare."

95 Or at 461.

Two years later, in 1919, the legislature passed a separate statute regarding insurance. Or Laws 1919, ch 110, § 1; *see Baker v. Federal Crop Ins. Corp.*, 241 Or 609, 620-21, 407 P2d 841 (1965) (explaining that the 1919 Act "is not a part of the General Insurance Law"). Unlike the 1917 Insurance Code and the 1887 Act that preceded it, the 1919 Act did not prescribe either the prerequisites for or the manner of engaging in the business of insurance in Oregon. *See* Or Laws 1919, ch 110. Rather, it provided that, "[w]henever any suit or action is brought in any of the courts of this state upon any policy of insurance of any kind or nature whatsoever," the plaintiff may recover attorney fees if settlement was not made within eight months of filing the proof of loss and if the plaintiff recovered more than the insurer had tendered. Or Laws 1919, ch 110, § 1. As this court has recognized, the entitlement to attorney fees that the 1919 Act provided was remedial and, as a result, was a procedural matter "controlled by the law of the forum." *Baker*, 241 Or at 620 (internal quotation marks omitted); *see also Spicer v. Benefit Ass'n of Ry. Emp.*, 142 Or 574, 592-93, 17 P2d 1107, 21 P2d 187 (1933) (noting that the 1919 Act "concerns itself merely with the laws of procedure or remedies").

In 1920, the code commissioner codified both the 1917 Insurance Code and the 1919 act authorizing awards of attorney fees. *See* Oregon Laws, title XXXVI, ch I, §§ 6322-6456 (1920).[4] Because the previous codification of Oregon laws had occurred approximately 10 years earlier, the 1920 codification was the first compilation of Oregon laws to include both the 1917 Insurance Code and the 1919 act authorizing attorney fees in actions on insurance policies. The code commissioner placed the latter act among

---

[4] In 1919, the legislature authorized the Supreme Court to appoint a "code commissioner" to "superintend and assist in the compilation, annotation and publication of the codes and statutes of Oregon." Or Laws 1919, ch 266, § 1.

the prefatory provisions of the 1917 Insurance Code. *See id*. §§ 6322-6358 (codifying the 1919 Act among those sections). In placing the 1919 act authorizing attorney fees within the provisions of the 1917 Insurance Code, the code commissioner did not change its meaning. *See State v. Gaunt*, 13 Or 115, 116, 9 P 55 (1885) (recognizing that "the legislature cannot delegate to a code commission power to amend the laws of the state"). Rather, as this court later explained, what is now codified as ORS 742.061

"was first enacted by Chapter 110, Oregon Laws 1919, without reference to the [1917] insurance code as such. This was for the obvious reason that the enactment was unrelated to state regulation and supervision of insurance companies."

*Baker*, 241 Or at 621.[5]

It follows that, before 1967, what is now codified as ORS 742.061 applied to every action brought on any insurance policy in any Oregon court. That statute did not purport to regulate the business of insurance. It did not prescribe the terms for insurance policies issued in Oregon, nor did it set out the prerequisites for engaging in the business of insurance in Oregon. Rather, it authorized Oregon courts to award attorney fees as an incident of a plaintiff's remedy in any action brought on any insurance policy in any Oregon court, and it applied without regard to the state in which the policy was issued for delivery or delivered. Having clarified the law before 1967, we turn to the question whether the legislature intended to alter the 1919 Act when it revised the insurance code in 1967.

The 1967 legislature enacted what is now codified as ORS 742.001 as part of the first comprehensive revision

---

[5] In *Baker*, the plaintiff successfully had sued the Federal Crop Insurance Corporation in state court and recovered attorney fees under what is now codified as ORS 742.061. In arguing that the plaintiff could not recover attorney fees, the defendant contended that, if ORS 742.061 applied to it, so would the rest of the Insurance Code. The court had no difficulty in concluding that ORS 742.061 is separate from the remainder of the chapter governing entities engaged in the business of insurance in Oregon; that is, the fact that ORS 742.061 applied to the federal corporation did not mean that Oregon's Insurance Code did.

of the Insurance Code since 1917. *See* Or Laws 1967, ch 359, § 335.[6] For ease of reference, the legislature divided the 1967 Act into 12 chapters. *See id.* § 712 (providing that the "chapter titles, division titles, section titles, * * * and parenthetical clauses describing internal references to sections of this Act are provided only for convenience in locating or explaining provisions in this Act and are not intended to be part of the statutory law of the State of Oregon"). Chapter 6 of the 1967 Act was captioned "The Insurance Policy." *See id.* § 335. The first section of that chapter—section 335—is now codified as ORS 742.001. *See id.* As enacted in 1967, section 335 provided,

> "Sections 335 to 524 of this 1967 Act apply as to all insurance policies delivered or issued for delivery in this state other than reinsurance and wet marine and transportation insurance policies."

*Id.*

The legislature divided the 189 sections that made up Chapter 6 (sections 335 to 524) into 11 "divisions," each of which was headed by a "division title." The first division was titled "Generally." *See id.* §§ 336-371. The next 10 divisions were titled "Individual Life Insurance and Annuities," "Individual Health Insurance," "Fire Insurance," "Mortgage Insurance," "Surety Insurance," and the like. For the most part, each of the last 10 divisions in Chapter 6 set out the terms that a policy for that type of insurance may or must contain. *See, e.g., id.* § 373 (a life insurance policy "shall contain a provision stating the amount of benefits payable"); *id.* § 446 (a health insurance policy may contain an "other insurers" provision).

The first division in Chapter 6, which was titled "Generally," included sections that specified the grounds on which the Insurance Commissioner could approve, disapprove, or withdraw approval of forms and rates. *See id.* §§ 336-338 (approval and disapproval of forms); *id.* § 339 (filing and approval of rates for certain kinds of insurance). It set out standard terms for policies and provided when

---

[6] In revising the insurance code, the 1967 legislature rearranged and amended sections of the preexisting code, repealed some of those sections, and enacted new provisions. *See* Or Laws, ch 359.

a policy could contain additional or different terms. *Id.* §§ 350-351 (standard provisions); *id.* § 353 (additional terms). The last section included in the first division of Chapter 6—section 371—amended the statute enacted in 1919 authorizing an award of attorney fees. *See id.* § 371. That section, which is now codified as ORS 742.061, was in essentially the same form in 1967 as it was when it was first enacted in 1919 and as it is today. *See id.*[7]

With that background in mind, we turn to the text of section 335, which is codified, as amended, as ORS 742.001. As noted, section 335 provided,

> "Sections 335 to 524 of this 1967 Act apply as to all insurance policies delivered or issued for delivery in this state other than reinsurance and wet marine and transportation insurance policies."

Or Laws 1967, ch 359, § 335. Section 335 consists of a single sentence, which divides into two parts. The first part provides that "[s]ections 335 to 524 * * * apply as to all insurance policies delivered or issued for delivery in this state." The second part is a prepositional phrase, which excepts "reinsurance and wet marine and transportation insurance policies." Defendant's argument turns on the first part of the sentence. It asserts, and the Court of Appeals agreed, that section 335 unambiguously provides that sections 335 to 524 of the 1967 Act apply only to insurance policies delivered or issued for delivery in Oregon.

In our view, the text of section 335 does not require the interpretation that defendant gives it, which depends on reading the word "only" into that section. To be sure, the text of section 335, read in isolation, permits defendant's interpretation; that is, it is possible to conclude that, because

---

[7] Section 371(1) of the 1967 Act provided,

"If settlement is not made within six months from the date proof of loss is filed with an insurer, and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, then the plaintiff shall recover part of his judgment such additional sum as the court may adjudge to be reasonable as attorney fees."

Or Laws 1967, ch 359, § 371(1).

section 335 provided that "[s]ections 335 to 524 * * * apply as to all insurance policies delivered or issued for delivery" in this state, those sections did not apply to policies delivered or issued for delivery in other states. *Cf. Waddill v. Anchor Hocking, Inc.*, 330 Or 376, 381-82, 8 P3d 200 (2000) (applying the maxim *inclusio unius est exclusio alterius*). However, as this court explained in *Stevens v. Czerniak*, 336 Or 392, 401, 84 P3d 140 (2004), "text should not be read in isolation but must be considered in context." In this case, two contextual sources cast a different light on the meaning of section 335.

First, comparable sections in Chapter 6 of the 1967 Insurance Code contain the word "only." For example, section 372, the first section in the division titled "Individual Life Insurance and Annuities" in Chapter 6, provides that "[s]ections 372 to 374 of this 1967 Act apply only to policies of life insurance, other than group life insurance." Or Laws 1967, ch 359, § 372. Similarly, section 375 provides that "[s]ections 376 to 403 of this 1967 Act apply only to policies of life insurance other than group life insurance, and do not apply to annuity or pure endowment policies." *Id.* § 375.[8] Sections 335, 372, and 375 were all newly enacted provisions included within the same chapter of the 1967 Act. The wording of sections 372 and 375 is virtually identical to that of section 335. Those sections differ from section 335 in one material respect. They provide that the sections that follow apply "only" to certain kinds of insurance. Section 335 omits that limitation.

Given the close relationship among sections 335, 372, and 375, we assume that the omission of the word "only" from section 335 was purposeful. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) (explaining that the "use of a term in one section [of a statute] and not in another section of the same statute indicates a purposeful omission"). The purposeful omission of the word "only" from section 335 is at odds with defendant's reading of that section, which turns on the proposition that that limitation is necessarily implicit in the terms of section 335.

---

[8] Sections 372 and 375 are now codified as ORS 743.150 and ORS 743.159.

A second contextual source points in the same direction. Defendant's reading of section 335 is difficult to square with the text of section 371, which is now codified as ORS 742.061. Section 371 provides, as the earlier attorney fees statute that it amended had provided, for an award of fees when "an action is brought in any court of this state upon any policy of insurance of any kind or nature." As explained above, that statute is remedial and part of the law of the forum. By its terms, it applies whenever an action is filed on any insurance policy in any court of this state. It does not purport to state substantive requirements for policies issued or delivered in Oregon. Adding the word "only" to section 335, as defendant would, limits the remedial scope of that provision. When, as in this case, a statute contains multiple provisions, we should, if possible, read those provisions in a way that will give effect to all of them. *See Vsetecka v. Safeway Stores, Inc.*, 337 Or 502, 510, 98 P3d 1116 (2004).[9]

As explained below, the legislative history of the 1967 Insurance Code shows that section 335 serves a different purpose than defendant perceives and that we may give full effect to both sections 335 and 371. More specifically, the legislative history demonstrates that, in enacting section 335, the 1967 legislature intended to expand the state's authority to impose substantive regulations on insurers transacting business in Oregon, consistently with federal limitations. The legislature did not intend that section 335 would limit the scope of any remedial sections, such as section 371, included within Chapter 6 of the 1967 Act. We turn to that history.

The 1965 legislature established an interim committee to "prepar[e] a proposed substantive revision of the insurance laws of this state[.]" HJR 51 (1965). When the proposed revision of the insurance code was presented to the legislature in 1967, one of the issues that the legislature discussed was the scope of the revised code. Specifically, a

---

[9] The Court of Appeals reasoned that ORS 742.001 could be read together with ORS 742.061, and that its reading of the two statutes did "no violence to ORS 742.061." *Morgan*, 242 Or App at 670. The Court of Appeals, however, converted a statute that, by its terms, applies whenever an action is brought on "any policy of insurance" into one that applies only when actions are brought on some policies of insurance.

member of the interim committee noted that "one particular problem" that the committee had considered was whether Oregon could regulate out-of-state mail-order insurers consistently with "interstate commerce and federal laws pre-empting state laws." *See* Minutes, House Committee on Financial Affairs, Jan 12, 1967, 4 (testimony of William Love). He explained that the proposal that the committee had adopted was "basically the one in the Wisconsin Code which was upheld by the Wisconsin Supreme Court" against a claim that Wisconsin's code exceeded the limits placed on it by federal law. *Id.* The interim committee member explained that, "[s]ince the U.S. Supreme Court refused to review the Wisconsin decision, the revisers felt the Wisconsin [provision] could safely be adopted as constitutional." *Id.* Among other things, that provision defined "[t]ransact[ing] insurance" as including "[i]ssuing or delivering policies of insurance" "by mail or otherwise." *See* Or Laws 1967, ch 359, § 30.

The Wisconsin case to which the interim committee member referred appears to be *Ministers Life & Casualty Union v. Haase*, 141 NW2d 287 (Wis), *appeal dismissed*, 385 US 205 (1966).[10] In that case, Wisconsin had sought to regulate out-of-state insurance companies that solicited business in Wisconsin through advertisements in national publications, received applications for insurance from Wisconsin residents by mail, and then issued policies to those residents also by mail. *See id.* at 289 (describing the insurance company's practices). Relying on *State Board of Insurance v. Todd Shipyards Corp.*, 370 US 451, 82 S Ct 1380, 8 L Ed 2d 620 (1962), the insurance company argued that federal law prevented Wisconsin from regulating its activities. Specifically, it argued that, in authorizing states to regulate the business of insurance in the McCarran Act, 59 Stat 33 (1945), Congress had identified three Supreme Court cases that marked the outer limit of a state's authority to regulate the business of insurance and that those cases stood for the proposition that a state may not regulate insurers when, among other things, the contract of insurance was entered into outside the state. *Ministers Life*, 141 NW2d at 291.[11]

---

[10] The committee member did not refer to the decision by name, but only one Wisconsin Supreme Court decision fits his description of it.

[11] All three cases identified due process limits on a state's regulatory authority. One case involved Louisiana's efforts to regulate an insurer that issued an open-marine policy that covered a risk in New Orleans but that otherwise had no

The Wisconsin Supreme Court held that, in identifying those cases as the outer limit of a state's authority to regulate the business of insurance, Congress had not intended to adopt their reasoning, which was based on older theories of due process. *See id.* at 293 (rejecting the notion that the McCarran Act enshrined a "static or conceptualistic theory of 'doing business' as the jurisdictional basis for state regulation"). Rather, the court reasoned that the results, not the reasoning, in those cases defined the outer limit of a state's authority. *See id.* (explaining that those cases stood for the proposition that a state may not regulate an out-of-state insurer when the insurer's "only contact [with the state] was the location of the risk within the state"). The court accordingly concluded that federal law permitted a state to impose substantive regulations on out-of-state insurers when, among other things, those insurers issued policies for delivery or delivered polices within the state. *See id.* at 291 (upholding the Wisconsin statute); *id.* at 296 (explaining that imposing substantive regulations on out-of-state insurers that transact business in Wisconsin did not violate due process).

The insurer in the Wisconsin case appealed to the United States Supreme Court, which dismissed the appeal on December 5, 1966, for want of a substantial federal question. *Ministers Life & Casualty Union v. Haase*, 385 US 205, 87 S Ct 407, 17 L Ed 2d 301 (1966) (per curiam). That dismissal occurred approximately five weeks before the interim committee member explained to the 1967 Oregon legislature that Oregon's proposed insurance code extended as far as Wisconsin's did and that the United States Supreme Court had declined to consider the Wisconsin Supreme Court's decision upholding its state's law against a federal challenge. *See* Minutes, House Committee on Financial Affairs, Jan 12, 1967, 4 (testimony of William Love).

---

connection to Louisiana. *Allgeyer v. Louisiana*, 165 US 578, 17 S Ct 427, 41 L Ed 832 (1897). Another involved an effort by California to tax reinsurance policies when the reinsurance contracts were made and the premiums and losses were paid in another state. *Connecticut General Life Insurance Co. v. Johnson*, 303 US 77, 58 S Ct 436, 82 L Ed 673 (1938). The third involved an effort by a state to regulate insurance obtained elsewhere that covered a risk in that state. *St. Louis Cotton Compress Co. v. Arkansas*, 260 US 346, 43 S Ct 125, 67 L Ed 297 (1922).

We draw three conclusions from that legislative history. First, given the Wisconsin Supreme Court's decision that federal law did not prevent Wisconsin from regulating mail-order insurance companies selling and delivering insurance in that state, Oregon sought to regulate insurers to the same extent. Second, in providing that "[s]ections 335 to 524 of this 1967 Act apply as to all insurance policies delivered or issued for delivery in this state," the 1967 legislature sought to expand the state's substantive authority to regulate out-of-state insurers transacting business in Oregon, as Wisconsin had done. Third, the 1967 legislature understood that the McCarran Act and the Due Process Clause imposed limits on a state's authority to regulate out-of-state insurers, but that was not the intended function of section 335.

Considering the text, context, and legislative history of the 1967 Act, we conclude that the legislature did not intend that ORS 742.001 would limit the scope of ORS 742.061. For us to hold otherwise, we would have to turn an expansion of the state's authority to impose substantive regulations on insurers transacting business in Oregon into a limitation on the remedial and procedural rules that affect insurers appearing in its courts. We would have to overlook the purposeful omission of the word "only" from the text of ORS 742.001, and we would have to read a limitation into the text of that section that the legislature did not include. We may not do that. We accordingly hold that ORS 742.001 does not limit the scope of ORS 742.061. Rather, ORS 742.061 applies, as its terms state, whenever "an action is brought in any court of this state upon any policy of insurance of any kind or nature." The Court of Appeals and the trial court erred in holding otherwise.[12]

The decision of the Court of Appeals is reversed. The supplemental judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

---

[12] Because the trial court concluded that ORS 742.001 precluded plaintiff from recovering her fees, it had no occasion to consider other issues related to plaintiff's fee request.