Argued February 3, affirmed March 9, 1920.

# LOVEJOY *v.* PORTLAND.

(188 Pac. 207.)

**Statutes—Constitutional Provision Demanding That There be but One Subject to be Liberally Construed.**

1.   While Article IV, Section 20, of the Constitution, demanding that every act embrace but one subject, and the matters properly connected therewith, which subject shall be expressed in the title, is mandatory, and failure to comply with it renders a statute void, yet it should be reasonably and liberally construed to sustain legislation not within the mischief aimed against.

> [As to constitutional requirement as to form of enacting clause of statute as directory or mandatory, see note in 14 Ann. Cas. 813.]

**Constitutional Law—Statute Presumed to be Constitutional and to Embrace Only One Subject.**

2.   Every legislative act is presumed to be constitutional, and the conflict between a statute and the Constitution should be palpable before a legislative enactment should be held to be void on the ground that it embraces more than one subject or because the subject is not sufficiently expressed in the title.

**Statutes—"Subject," in Constitutional Provision Providing That Subject be Expressed in Title, Given Broad Meaning.**

3.   The term "subject," in Article IV, Section 20, of the Constitution, demanding that every act which embraces but one subject, and matters properly connected therewith, which subject shall be expressed in the title, is to be given a broad and extensive meaning so as to allow the legislature full scope to include in one act all matters having a logical or natural connection, and the subject may be as comprehensive as the legislature chooses to make it, provided it constitutes, in the constitutional sense, a single subject and not several.

> [As to construction of constitutional provisions relative to titles of statutes, see notes in 1 Ann. Cas. 584; Ann. Cas. 1915A, 79.]

**Statutes—Provision in General Statutes Relating to Insurance Prohibiting Cities from Imposing License Taxes Properly Connected With Subject of Enactment.**

4.   The provision within Laws of 1917, page 321, Section 3d, subdivision 6, which prohibits cities and towns from imposing additional license taxes, is properly connected with the subject of such chapter, which generally relates to the regulation and supervision of insurance, and the title is sufficient to include such provision.

Municipal Corporations—Statute Prohibiting a Municipal Corporation from Imposing License Taxes on Insurance Agents No Invasion of Field of Municipal Legislation.

5. Laws of 1917, page 321, Section 3d, subdivision 6, prohibiting cities from imposing a license tax on insurance agents, does not contravene Article XI, Section 2, of the Constitution, prohibiting the legislature from entering into the field of municipal legislation.

Municipal Corporations—Legislature not Prohibited by Constitution from Enacting General Laws Concerning Municipal Corporations.

6. The legislature is not prohibited by Article XI, Section 2, of the Constitution, from enacting general laws concerning cities and towns.

Courts—Part of Opinion Relating to Power of Legislature to Enact General Laws Concerning Municipal Corporations not Obiter Dictum.

7. Where, on appeal, the court had for consideration, first, whether a port was a "municipality" within the purview of Article XI, Section 2, of the Constitution, and, second, whether that section prohibited the legislature from enacting general laws affecting corporate bodies embraced within it, the decision of the first question in the negative did not render a decision in the same opinion as to the second question *obiter dictum.*

From Multnomah: John P. Kavanaugh, Judge.

In Banc.

This is a suit brought by George A. Lovejoy to enjoin the City of Portland from compelling him to pay a license fee for the right to act as an insurance agent in Portland. The city demurred to the complaint; the court overruled the demurrer, and upon the refusal of the city to plead further a decree was entered for the plaintiff, and the city appealed. The demurrer assumes that the allegations of the complaint are true.

The controversy arises out of a conflict between a state statute and a city ordinance, and on that account it will be necessary to direct attention first to the state statute and then to the city legislation. In 1917 the legislative assembly enacted a measure entitled "An act to provide for the regulation and supervision of insurance in the State of Oregon, other than State Industrial Accident Insurance, and repealing" a considerable number of sections of the Code as well as

certain laws adopted in 1911 and 1915. This enactment is otherwise known as Chapter 203, Laws of 1917, and it thoroughly covers the field of insurance regulation and supervision. It regulates the conditions under which business may be commenced and the manner in which it may be conducted. It regulates the organization of the insurance department, and it prescribes the jurisdiction and defines the powers of the state insurance commissioner. It deals with the mode of organizing local companies, the admission of foreign companies, the nature of the investments of local and foreign companies, and examinations and reports of companies. It contains various provisions to insure the solvency of insurance companies, and it affords means for excluding companies of impaired or doubtful solvency. It prescribes the qualifications of agents and provides for licensing them and for revoking the licenses of agents who violate the law or are otherwise unfit. It specifies the kinds of insurance which various companies may write, and it designates the form and manner in which policies may be written. It contains rules designed to secure equal rights and opportunities between insurance companies, to prevent discrimination in rates, and to compel insurers to treat all insured alike. It furnishes safeguards against excessive or unjust premium rates, and it contains prohibitions against combinations between companies or agents for any purpose detrimental to the public welfare. In a word, the legislature has attempted to place the insurance business completely under the supervision of the state, and to accomplish the purpose the state has adopted an elaborate and comprehensive statute covering the whole field of insurance regulation and supervision.

This statute imposes a tax upon the business done by a company, and it prescribes license fees for companies and agents. Section 3d, subdivision 2, requires a foreign company to pay to the insurance commissioner an annual tax of $2\frac{1}{2}$ per cent of the net premiums. Subdivision 5 of the same section prescribes fees to be paid by companies, including an annual license fee of $100 for life insurance companies and a license fee of $2 for each of its agents. Section 3e imposes reciprocal obligations upon the companies of other states in which the taxes, license fees, obligations, and prohibitions, in the aggregate exceed those imposed by this state. Section 3f provides that the fees, licenses, taxes, fines, and penalties paid to the insurance commissioner shall be turned over to the state treasurer and so far as necessary shall be available from the general fund for the payment of the expenses of the insurance department.

In Section 3d, subdivision 6, it is said:

"The taxes, fees and charges as herein and elsewhere provided for in the 'Insurance Law' shall be in lieu of all other taxes, licenses, fees and charges of every kind and character by the state or any city, town, county or other political subdivision thereof, except taxes on real and personal property located in this state, which may be required of companies or their agents for the privilege of transacting insurance business."

On June 6, 1917, the council of Portland passed an ordinance numbered 32,925 and entitled "An ordinance on the regulation of private business, including licenses, and declaring an emergency." This ordinance makes it unlawful for any person to engage in any business, profession, trade, or calling, specified in the ordinance unless such person obtains an appropriate license from the city. Insurance agents are among those included

in the ordinance, for it is provided that every agent of any insurance, bonding, surety, indemnity, or guaranty company shall pay for each company represented by him, and that any company doing business directly shall pay to the City of Portland a quarterly license of $10, payable January 1, April 1, July 1, and October 1 of each year in advance. The ordinance declares that a violation of any of its provisions shall be punished by a fine or imprisonment or both. Ordinance No. 32,925 is, so far as insurance agents are concerned, in substance the same as a prior ordinance which had been adopted before the enactment of Chapter 203, Laws of 1917, but this prior ordinance was not repealed or modified by the city until Ordinance No. 32,925 was adopted.

The city is authorized by its charter to impose licenses and taxes. The charter (Section 73, subd. 21) granted by the legislature in 1903 (Sp. Laws 1903, c. 1) empowered the council to "grant licenses, with the object of raising revenue or of regulation, or both, for any and all lawful acts, things, or purposes, and to fix, by ordinance, the amount to be paid therefor, and to provide for the revoking of the same. * * "

When the legal voters of Portland, in the exercise of the power of the initiative, re-framed the city charter in 1913, they inserted in the re-framed charter the following provision:

"The specific powers granted to the city under Sections 73 and 73½ of the Charter of 1913 shall continue to be exercised by the Council as a part of the general grant made by the Charter."

The Guarantee Fund Life Association, hereinafter called the company, is a life insurance corporation organized under the laws of Nebraska, and it has fully complied with the laws of Oregon relating to the ad-

mission of foreign insurance companies in this state. This company has been legally licensed and permitted by the state insurance commissioner to transact business here, and it is engaged in transacting life insurance business throughout this state. The company has paid to the state insurance commissioner all licenses, fees, and taxes required by this state, including the sum of $86.18, which is the portion of the annual license fee required for the privilege of transacting business from May 21, 1917, to April 1, 1918. The plaintiff is authorized by the company "to act as its agent at Portland," and the company has paid to the state insurance commissioner the sum of $2, "being the fee required by the laws of the State of Oregon to be paid for the licensing of this plaintiff as its agent for the period of time from May 21, 1917, to April 1, 1918," and the plaintiff was licensed and authorized by the insurance commissioner to act as an agent of the company at Portland until April 1, 1918.

Notwithstanding the terms of Section 3d, subd. 6, of Chapter 203, Laws of 1917, the city claims that Ordinance No. 32,925 was valid and enforceable and demanded that the plaintiff "as agent at Portland" of the company pay to the city the sum of $10 "as a quarterly license fee under the ordinance" for the quarter beginning July 1, 1917; and the city threatened, unless the plaintiff paid the demanded fee, to arrest and fine and imprison him. On July 7, 1917, the plaintiff, for himself and in behalf of about two hundred other insurance agents in Portland similarly situated, began this suit for the purpose of enjoining the city from enforcing the ordinance.        Affirmed.

For appellant there was a brief with oral arguments by *Mr. Walter P. La Roche,* City Attorney, and *Mr. L. E. Latourette,* Deputy City Attorney.

For respondent there was a brief over the names of *Messrs. Veazie, McCourt & Veazie,* and *Mr. Lionel C. Mackay,* with an oral argument by *Mr. J. C. Veazie.*

HARRIS, J.—1, 2.   Like most of the State Constitutions, our organic law commands that—

"Every act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title": Article IV, Section 20.

The defendant contends that the title of Chapter 203, Laws of 1917, is not sufficient, within the meaning of Article IV, Section 20, of the state Constitution, to include and sustain subdivision 6 of Section 3d of the act.   This section of the Constitution was designed to do away with the several abuses, among which was the practice of inserting in one bill two or more unrelated provisions so that those favoring one provision could be compelled, in order to secure its adoption, to combine with those favoring another provision, and by this process of log-rolling the adoption of both provisions could be accomplished, when neither, if standing alone, could succeed on its own merits.   Another abuse which developed in legislative bodies was the practice of concealing from the members of the legislature the true nature of the proposed law by giving it a false and misleading title, and to prevent surreptitious legislation in this manner is one of the objects of the Constitution.   These and similar abuses inspired the adoption of Article IV, Section 20: *Northern Counties Trust* v. *Sears,* 30 Or. 388, 400 (41 Pac. 931, 35 L. R. A. 188); *Moore-Mansfield Construction Co.* v. *Indianapolis R. Co.,* 179 Ind. 356 (101 N. E. 296, Ann. Cas. 1915D, 917, 44 L. R. A. (N. S.) 816); *Johnson* v. *Harrison,* 47 Minn. 575 (50 N. W. 923, 28 Am. St. Rep. 382); *County Commissioners* v. *Pocomoke Bridge Co.,* 109

95 Or.—30

Md. 1 (71 Atl. 462, 16 Ann. Cas. 874). While Article
IV, Section 20, is mandatory and failure to comply with
it renders a statute void, yet this section of the Con-
stitution should be reasonably and liberally construed
to sustain legislation not within the mischief aimed
against: *State* v. *Shaw,* 22 Or. 287, 288 (29 Pac. 1028);
25 R. C. L. 85. Every legislative act is presumed to
be constitutional, and the conflict between a statute
and the Constitution should be palpable before the
legislative enactment is held to be void on the ground
that it embraces more than one subject or because the
subject is not sufficiently expressed in the title: *Pacific
Elevator Co.* v. *Portland,* 65 Or. 349, 384 (133 Pac. 72,
46 L. R. A. (N. S.) 363).

3. It is the "subject" of the act, and not "matters
properly connected therewith," that must be expressed
in the title, for the language of the Constitution is,
"which subject shall be expressed in the title": *East-
man* v. *Jennings-McRae Logging Co.,* 69 Or. 1, 10 (138
Pac. 216, Ann. Cas. 1916A, 185); *Parks* v. *State,* 159
Ind. 211 (64 N. E. 862, 59 L. R. A. 190). The subject
of the law is the matter to which the measure relates
and with which it deals: 25 R. C. L. 842. The term
"subject" is to be given a broad and extensive meaning
so as to allow the legislature full scope to include in
one act all matters having a logical or natural connec-
tion. The subject may be as comprehensive as the legis-
lature chooses to make it, provided it constituted, in
the constitutional sense, a single subject and not sev-
eral, for the Constitution does not contain any limita-
tion on the comprehensiveness of the subject: *State*
v. *Shaw,* 22 Or. 287 (29 Pac. 1028).

The word "subject" includes the chief thing to which
the statute relates, and the words "matters properly
connected therewith" include every matter germane to

and having a natural connection with the general subject of the act; or as said in *State* v. *Shaw,* 22 Or. 289 (29 Pac. 1029):

"If all the provisions of the law relate directly or indirectly to the same subject, are naturally connected, and are not foreign to the subject expressed in the title, they will not be held unconstitutional": *Simon* v. *Northup,* 27 Or. 487 (40 Pac. 560, 30 L. R. A. 171); *Northern Counties Trust* v. *Sears,* 30 Or. 388 (41 Pac. 931, 35 L. R. A. 188); *Pacific Elevator Co.* v. *Portland,* 65 Or. 349 (133 Pac. 72, 46 L. R. A. (N. S.) 363).

4. The office of the title is to inform the members of the legislature of the subject of the proposed legislation, but the details must be found in the body of the measure. If the subject of the enactment is so expressed in the title as to give reasonable notice of the contents of the law, it is sufficient. If a measure has but one general subject which is fairly expressed in its title, it will be held to be a compliance with the Constitution. The general object and purpose of Chapter 203, Laws of 1917, is to regulate and supervise insurance, other than State Industrial Accident Insurance; and its general object is fairly stated in the title of the act. Whatever means may tend directly or indirectly to accomplish this object may properly be included in the act. The payment of license taxes is undoubtedly a means for the accomplishment of the object; and, within every rule of construction applied by the courts, the provision which prohibits cities and towns from imposing additional license taxes must be treated as properly connected with the subject of state regulation and supervision of insurance, for it is manifestly designed to aid state regulation and supervision: *State* v. *Shaw,* 22 Or. 287 (29 Pac. 1028); *Eastman* v. *Jennings-McRae Logging Co.,* 69 Or. 1, 10 (138 Pac.

216, Ann. Cas. 1916A, 185); *State* v. *Applegarth,* 81 Md. 293 (31 Atl. 961, 28 L. R. A. 812). The title of Chapter 203, Laws of 1917, is sufficient to include subdivision 6, Section 3d.

5, 6. The defendant argues that subdivision 6, Section 3d, is void because its contravenes Article XI, Section 2, of the state Constitution. This argument proceeds upon the theory that the Constitution confers upon cities and towns power to exercise the whole sum of municipal legislation, and at the same time prohibits the legislature from entering into the field of municipal legislation either by a special or by a general law. The defendant says that Ordinance No. 32,925 is pure municipal legislation, and that therefore the state law must give way to the city law. It is obvious that the ordinance and subdivision 6 of Section 3d of the state law are in irreconcilable conflict; both cannot stand; only one, and not both, can be supreme; one must yield to the other. Chapter 203, Laws of 1917, is not a special law applicable only to a single city, but it is a general law operating throughout the entire state; and hence whether the ordinance can survive or must succumb to the state law depends upon whether the authority of the city is superior to that of the legislature. The contention of the defendant is simply an attempt to revive the heretofore much debated but now settled question of whether or not the legislature is prohibited by Article XI, Section 2, from enacting general laws concerning cities and towns.

Article IV, Section 1a, and the amendment of Article XI, Section 2, of the state Constitution, were adopted in 1906. The language employed in these companion sections from the very beginning provoked much discussion and produced a contrariety of views among the members of the legal profession; and, indeed, as

pointed out in *State* v. *Port of Astoria,* 79 Or. 1, 18
(154 Pac. 399), even the courts, as evidenced by the
precedents there collected and classified, during the
first decade after the adoption of the amendments did
not follow an unswerving course when considering the
right of the legislature to enact general laws affecting
the intramural powers of cities.

Although during that period there was a lack of com-
plete harmony among the precedents, yet the most of
them held in plain and unmistakable language that the
legislature was not prohibited from passing general
laws concerning cities and towns, while only a few of
them held that the legislature was prohibited from
passing general laws regulating intramural authority.
Among the precedents belonging to the larger class
are: *Straw* v. *Harris,* 54 Or. 424 (103 Pac. 777);
*Kiernan* v. *Portland,* 57 Or. 454 (111 Pac. 379, 112 Pac.
402, 37 L. R. A. (N. S.) 339); *State ex rel.* v. *Port of*
*Tillamook,* 62 Or. 332 (124 Pac. 637, Ann. Cas. 1914C,
483); *Churchill* v. *Grants Pass,* 70 Or. 283 (141 Pac.
184); *State ex inf.* v. *Gilbert,* 66 Or. 434 (134 Pac.
1038); *McMinnville* v. *Howenstine,* 56 Or. 451 (109 Pac.
81, Ann. Cas. 1912C, 193). We cannot misunderstand
the mind of the court when we read in *Straw* v. *Harris*:

"This [revision, amendment, or repeal of charters],
under the Constitution as it now stands, may be done
by the legislature through general laws only."

In *Kiernan* v. *Portland,* it is said:

"Under all the rules of construction, this exception
[that no special laws creating or affecting the munici-
palities shall be enacted by the legislature] reserves
to the legislative department the right, whether by the
people directly through the initiative, or indirectly
through the legislature, to enact general laws upon the
subject, making it clear that the inhibition in the next
sentence has reference to special laws."

The following excerpt is taken from the opinion in *State ex rel.* v. *Port of Tillamook:*

"Such municipal corporations are always subject to the control and regulation of the lawmakers of the State in the manner directed by the Constitution: City of *McMinnville* v. *Howenstine,* 56 Or. 451, 456 (109 Pac. 81, Ann. Cas. 1912C, 193). While these public corporations are capable of adopting and amending their charter, they still continue to be agencies of the state. A general control is left in the legislative assembly."

We quote from *Churchill* v. *Grants Pass:*

"This delegation of rights as to local self-government does not alter the relation of municipal corporations to the state, but leaves them, as they were before, mere agencies of the state which may by general laws control all its municipalities even to the extent of amending their charters."

The following language appears in *State ex inf.* v. *Gilbert:*

"The inhibition of that section [Article XI, Section 2 of the Constitution] is directed solely against action by the legislature affecting only a particular municipality, city, or town."

In *McMinnville* v. *Howenstine,* this court said:

"In other words, the legislative assembly, as one of the state's law-making branches, may by general laws control and regulate all of its municipalities, while the people, through the direct method provided, may enact either general or special laws for this purpose."

Although in one of these cases there is a principal and a specially concurring opinion, both of which reach the same conclusion in which the other members of the court concur, yet in not one of these cases was there a dissenting voice. In each instance all the members of the court agreed. Of the three cases classified in *State* v. *Port of Astoria* as belonging to the minority,

*Kalich* v. *Knapp*, 73 Or. 558 (142 Pac. 594, 145 Pac. 22, Ann. Cas. 1916E, 1051), is the one most frequently referred to and constitutes the main reliance of the defendant. In each of these cases one or more members of the court raised a dissenting voice, and in not one of them did all members of the court concur. It is a noteworthy fact that in each of the three cases listed with the minority one or more members of the court dissented, while in each of the six cases belonging to the majority all the members of the court concurred in the conclusion reached, and, with the exception of one case where two members followed a different course of reasoning, they also agreed upon the reasoning employed. In *State* v. *Port of Astoria* no attempt was made to determine whether Article XI, Section 2, prohibited the legislature from enacting general laws affecting cities and towns, although attention was directed to the discordancy found in the precedents.

When the case of *Rose* v. *Port of Portland*, 82 Or. 541 (162 Pac. 498), was presented for decision this court entered into the investigation of the questions there involved with a full realization of the discordant rulings made in prior adjudications, and with the purpose of finally and definitely settling, if possible, the controverted questions arising out of Article IV, Section 1a, and Article XI, Section 2, of the state Constitution. Every member of the court gave to every one of these questions his best thought and most deliberate judgment, with the result that upon every question discussed all the members of the court agreed not only as to the conclusions, but also as to the reasoning employed. The rule unanimously adopted in *Rose* v. *Port of Portland* is decisive of the question here presented, for upon the authority of that precedent the legislature

had ample power to enact Chapter 203, Laws of 1917, including subdivision 6 of Section 3d.

7. The defendant argues, however, that all that was said in *Rose* v. *Port of Portland* as to the power of the legislature to enact general laws concerning cities and towns was *obiter dictum,* for the reason that it was decided that a port was not a municipality within the meaning of Article XI, Section 2. Counsel for the Port of Portland contended that this section of the Constitution prohibited the legislature not only from passing special laws but also from enacting general laws concerning any "municipality, city or town"; that a port was "a municipality" within the meaning of that term as used in the second sentence of the section; and that therefore all ports, including the Port of Portland, were freed from the control of the legislature and empowered to amend their own charters or acts of incorporation. When deciding that case, this court held, it is true, that the word "municipality" as used in the second sentence of Article XI, Section 2, did not include a port; but it is also true that the court prosecuted to the very end its examination of the contention made by the Port of Portland, by assuming, for the sake of the argument, that the port was correct in its contention that it was a "municipality" within the meaning of that section of the Constitution. Proceeding on this assumption the court then answered the argument of the Port of Portland, by holding that Article XI, Section 2, did not prohibit the legislature from enacting general laws concerning any of the corporate bodies embraced by that section of the Constitution. The contention of the Port of Portland presented to the court for its consideration: First, whether a port was a "municipality" within the purview of Article XI, Section 2; and, second, whether

that section prohibited the legislature from enacting general laws affecting corporate bodies embraced within it. The decision of one question did not render the decision of the other *obiter dictum.* The issues which the court was compelled to decide in *Rose* v. *Port of Portland,* in order to adjudicate the litigation, involved an examination and decision of the question which the defendant is here attempting to raise, and what the court there said when deciding that question is *stare decisis,* even under a strict construction and the most exact application of that doctrine.

, The conclusion unanimously agreed upon and announced in *Rose* v. *Port of Portland* was again followed, without a single dissenting voice, in *Colby* v. *City of Medford,* 85 Or. 485, 534 (167 Pac. 487, 502), for it is there said:

"The Bancroft Bonding Act was passed by the legislative assembly, and it is a statute of state-wide application, for it embraces every city and town in the state. The amendments found in Article IV, Section 1a, and Article XI, Section 2, of the Constitution, have not shorn the legislature of power to enact general laws concerning cities and towns: *Rose* v. *Port of Portland,* 82 Or. 541 (162 Pac. 498). Although passed prior to these two constitutional amendments, the Bancroft Bonding Act possesses just as much validity now as it did when originally enacted, for it governs, controls, and dominates every incorporated city and town in Oregon. * * The city is utterly powerless to enact and enforce municipal legislation which overrides this state law."

The most casual reading of the opinion rendered in *Colby* v. *City of Medford* will demonstrate that the court confined its discussion to the issues raised by the pleadings and to the questions involved in those issues. Again, and for the third consecutive time the court unanimously approved the rule that the legislature was

not prevented from enacting general laws affecting cities and towns, for in *Portland* v. *Public Service Commission,* 89 Or. 325 (173 Pac. 1178), the court said, when speaking of the power to revoke certain authority previously given by the state to the city:

"The legislature in delegating this authority to the city by the 1903 charter did not, nor could it, undertake to control the future legitimate exercise of the law-making power. The authority to delegate involves the power to revoke. That this may not be done in this instance by special law enacted by the legislative assembly amounting to a direct amendment of the Portland charter is granted; but that a general law of paramount authority over all municipal charters constitutionally may be enacted by the legislative assembly is taught in *Rose* v. *Port of Portland,* 82 Or. 541 (162 Pac. 498)."

The last three announcements of this court ought to be regarded as decisive of the question attempted to be presented here, especially since two of them were decided by the court sitting *in banc* and only one was heard by a single department, and in none of them was there a single dissenting voice.

So thorough and complete is Chapter 203, Laws of 1917, that it may with propriety be called the Insurance Code. The purpose of this legislation is to provide for the entire state a uniform and complete system of regulation and supervision of the insurance business. Nearly all, if not all, the states have enacted legislation for the regulation and supervision of insurance business done within their respective borders. In Oregon the insurance business is conducted principally by foreign corporations, and this state has the supreme authority and the exclusive control over the admission of these corporations to do business here and the manner in which they may be permitted to transact

business. Probably every company admitted to do business here not only has representatives in Portland, but also has agents in other places and does business throughout the entire state. The insurance business is state-wide in its scope, and it is a proper subject for state-wide regulation. It is apparent that, among other purposes, the Insurance Code was adopted to encourage the admission of sound and solvent companies so that adequate service may be given at reasonable rates; to bring about the appointment as agents of only those persons who possess the requisite qualifications and to compel them to perform their duties faithfully; to supervise rates and to place the making of rates upon a uniform and scientific basis; and to derive such revenue from the business as will pay the expense of supervision by the state without excluding desirable companies or agents or raising rates or otherwise interfering with the general purposes of the law.

Evidently, the legislature concluded that local taxation in the form of licenses might defeat some or all of these purposes. The legislature may have reasoned that, if one city may impose a license fee, all may do so; and that such tax in one city or town or the aggregate of such taxes in all cities and towns might become prohibitive and drive out all companies or all but the strongest and best established, or prevent the entrance of new and desirable companies into the state. The legislature may have reasoned further that the natural tendency of municipal license fees is to raise rates both directly and through reduction of competition, and that it would be impossible to apportion such increases to the various cities and towns in proportion to the licenses charged therein. The legislature may have concluded that the entire state would suffer on account of burdens imposed by certain cities, and that the col-

lection by the state of revenue sufficient for its purposes might be defeated if any considerable number of cities should impose heavy licenses.

The defendant concedes "that certain general laws enacted by the legislature may be valid, although they have the effect of amending or repealing certain provisions of municipal charters," if they "pertain to matters which are of a general character as distinguished from matters which are purely local and municipal." Obviously, the Insurance Code pertains "to matters which are of a general character as distinguished from matters which are purely local and municipal"; and consequently even though Chapter 203, Laws of 1917, is to be tested by the rule contended for by the defendant, the statute must be held to be constitutional.

The decree of the Circuit Court is affirmed.

AFFIRMED.

BENSON, J., took no part in the consideration of this case.