Argued March 4, affirmed June 17, 1970

# BENNETT, *Appellant, v.* OREGON STATE BAR, *Respondent.*

470 P2d 945

*Robert A. Bennett*, Portland, argued the cause in propria persona. With him on the briefs was Ralph H. King, Portland.

*Cleveland C. Cory* and *George M. Joseph*, Portland, argued the cause for respondent. With them on the brief were Davies, Biggs, Strayer, Stoel & Boley, George H. Frazer, Morrison & Bailey and Jack H. Dunn, Portland.

Before PERRY, Chief Justice,* and MCALLISTER,** SLOAN, O'CONNELL, DENECKE, HOLMAN and TONGUE,** Justices.

DENECKE, J.

The plaintiff challenges the constitutionality of the Client Security Fund Act (ORS 9.615–9.665) and the

---

\* Perry, C.J., retired June 1, 1970.
\*\* McAllister and Tongue, JJ., did not participate in this decision.

administrative proceedings establishing the fund. The trial court held for the defendant and plaintiff appeals.

The Client Security Fund Act authorized the Oregon State Bar to adopt a plan by which clients of members of the bar who suffered financial losses because of dishonest conduct of members of the bar could be reimbursed. The fund for the reimbursement of losses would be raised primarily by a standard compulsory payment by all members of the bar.

██ The plaintiff first contends that the act is invalid because the title of the act does not comply with § 20, Art IV of the Oregon Constitution requiring the subject of a legislative act to be expressed in the title.[①] The title to this act was "Relating to the Oregon State Bar." Plaintiff contends the constitutional provision requires that the title be sufficient so that a legislator could determine from the title "the purpose and true subject" of the act. This is not the interpretation this court has placed upon the constitutional provision.

All parties agree that Mr. Justice Harris's opinion in *Lovejoy v. Portland*, 95 Or 459, 188 P 207 (1920), is a clear exposition of the law on this subject. The title to the act in that case was " 'An act to provide for the regulation and supervision of insurance in the State of Oregon, other than State Industrial Accident Insurance, and repealing' a considerable number of sections of the Code as well as certain laws adopted in 1911 and 1915." 95 Or at 460-461. One section of the act provided that the fees and charges provided in the act

---

[①] "Every Act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title. But if any subject shall be embraced in an Act which shall not be expressed in the title, such Act shall be void only as to so much thereof as shall not be expressed in the title."

were in lieu of all other taxes, by any governmental body which may be required for the privilege of transacting business. 95 Or at 462. The court held the title was sufficient to include this section. Mr. Justice Harris stated:

"It is the 'subject' of the act, and not 'matters properly connected therewith,' that must be expressed in the title * * *. The subject may be as comprehensive as the legislature chooses to make it, provided it constituted, in the constitutional sense, a single subject and not several, for the Constitution does not contain any limitation on the comprehensiveness of the subject * * *."[2] 95 Or at 466.

More recently in *Warren v. Marion County*, 222 Or 307, 321, 353 P2d 257 (1960), the following title was held to comply with Art IV, § 20 of the Oregon Constitution: "Relating to county planning; creating new provisions; amending ORS 215.050, 215.150 and 215.-420; and providing penalties."

That portion of the statute involved in the *Warren* case dealt with county building codes and that subject was held to be included in the title, "Relating to county planning."

We find the title to be constitutionally sufficient.

■ Plaintiff contends that the act violates the "Equality of privileges and immunities of citizens" clause of the Oregon Constitution.[3] Plaintiff claims that the act is in violation because the classification,

---

[2] Warren v. Marion County, 222 Or 307, 321-323, 353 P2d 257 (1960), assumed the title, "Relating to county planning," was sufficient; the question was whether one subject in the act, building codes, was expressed in the title.

[3] "No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

lawyers, is unreasonable because no like obligation is placed upon other persons, such as stockbrokers and realtors, who also act in a fiduciary capacity.

Assuming the plaintiff has standing to raise this issue, which we do not here decide, we hold that the classification is reasonable. A constitution is not violated because the legislation does not cover all classes for which the legislation might be desirable. In *Semler v. Oregon Dental Examiners*, 148 Or 50, 34 P2d 311, affm'd 294 US 608, 55 S Ct 570, 79 L Ed 1086 (1934), legislation regulating advertising by dentists was attacked. The plaintiff contended this was class legislation because it applied only to dentists, whereas advertising has the same effect regardless of what profession is advertising. This contention was rejected:

"* * * It is not believed that the act is unconstitutional because the legislature did not cover the whole field of possible abuses. * * *.

"* * * * *

"We think the state has the power of dealing with each profession as a class unto itself and in so doing does not violate the equal protection clause of the constitution. * * *." 148 Or at 62-63.

The United States Supreme Court has similarly construed the equal protection clause of the Constitution of the United States. *Patsone v. Pennsylvania*, 232 US 138, 34 S Ct 281, 58 L Ed 539 (1914); *Miller v. Wilson*, 236 US 373, 35 S Ct 342, 59 L Ed 628 (1915).

■ Plaintiff further contends that the statute is contrary to the due process and equal protection clauses of the Fourteenth Amendment. The plaintiff argues that this case is analogous to those in which a statute attempted to impose liability for damages upon one who is not at fault; for example, a statute making a landowner from whose premises fire escaped through no

fault of his own liable for damages to others' property. *Eastman v. Jennings-McRae Logging Co.*, 69 Or 1, 138 P 216, Ann Cas 1916A 185 (1914), held such a statute invalid. However correct that decision may be, we consider it to be inapposite because we do not regard the issue as being whether an individual without fault constitutionally can be required to pay damages to another.

The issue is whether a lawyer can be required to contribute to the client security fund as a condition of membership in the bar. In our opinion a lawyer can be so required without violating the due process and equal protection clauses of the United States Constitution.

We interpret *Lathrop v. Donohue*, 367 US 820, 81 S Ct 1826, 6 L Ed2d 1191 (1961), as implying that the Fourteenth Amendment does not forbid compelling contributions to a client security fund.[4] In the *Lathrop* case the Court held the order of the Wisconsin Supreme Court integrating the bar, and thus requiring membership and the payment of dues as a condition to practicing law, did not violate the Fourteenth Amendment. While the decision was fragmented, seven justices concurred on this issue. The plurality of four saw the issue as "a question of compelled financial support of group activities * * *" (367 US at 828), and held such support could be compelled without violating the Fourteenth Amendment:

"* * * Both in purport and in practice the bulk of State Bar activities serve the function, or at

[4] Although there are numerous bar associations which have client security funds, no court has passed directly upon the constitutional issues raised in this appeal. In the matter of a Member of Bar, 257 A2d 382 (Del 1969), upheld a client security fund but the attack was not on the grounds advanced here.

least so Wisconsin might reasonably believe, of elevating the educational and ethical standards of the Bar to the end of improving the quality of the legal service available to the people of the State * * *. It cannot be denied that this is a legitimate end of state policy. We think that the Supreme Court of Wisconsin, in order to further the State's legitimate interests in raising the quality of professional services, may constitutionally require that the costs of improving the profession in this fashion should be shared by the subjects and beneficiaries of the regulatory program, the lawyers, * * *." 367 US at 843.

If compelled financial support for such bar activities as legislative activity, continuing legal education, handling of grievances, prevention of unauthorized practice, legal aid, and public relations is valid, as the Court held it was in *Lathrop v. Donohue*, supra (367 US 820), compelled support for the bar's client security fund is valid.

Mr. Justice Douglas, dissenting, took the position that states lack the power to require lawyers to join an association. He stated, however:

"If we had here a law which required lawyers to contribute to a fund out of which clients would be paid in case attorneys turned out to be embezzlers, the present objection might not be relevant. In that case, one risk of the profession would be distributed among all members of the group. The fact that a dissident member did not feel he had within him the seeds of an embezzler might not bar a levy on the whole profession for one sad but notorious risk of the profession. * * *" 367 US at 881.

█ █ The plaintiff further contends that, even if a client security fund could constitutionally be established, the Board of Governors of the Oregon State Bar did not validly establish the fund.

Judge Langtry's opinion in the trial court concluding that the plaintiff's contention was not correct is adopted as our opinion and is as follows:

"(1) The first point of the challenge asserts that the Board of Bar Governors did not 'adopt a plan' pursuant to the enabling statute before it levied the assessment which was collected with the 1968 bar dues. The most pertinent parts of the statute referred to are §§ 3 and 5. § 3 provides that the Board of Governors, with the approval of the State Bar, 'may adopt a plan' to relieve or mitigate pecuniary losses to clients. § 5 states that:

" 'To maintain a client security fund, the board of governors may require an annual payment of not to exceed $5 by every member of the state bar * * *.'

"The background of Ch. 546 is found in the committee reports of the Oregon State Bar which are exhibits in this case, among which was one setting forth a plan for a Client Security Fund. It was adopted after considerable debate by a vote of 142 to 124 at the 1966 convention. The Client Security Fund committee had another report for the State Bar convention in 1967, among the recommendations of which was that the Board of Governors of the State bar 'proceed under the resolution adopted by the 1966 convention to appoint the five member committee to administer the fund provided by that resolution.' This report was adopted by voice vote along with the reports of several other committees.

"This enabling act of the 1967 session (Ch. 546) became effective on September 16, 1967, and the 1967 bar convention which adopted the latter resolution was held thereafter. Following the 1967 annual meeting, the Board of Bar Governors took action about the Client Security Fund on several occasions. At the meeting of November 10-11, 1967, the minutes of the board show that a motion was adopted which provided for collection of an annual item of $5 for the Client Security Fund 'created by

Ch. 546, O.L. 1967'. Some other action was taken about the fund at the January 26-27, 1968, meeting of the board, and at the April 19-20, 1968, meeting a detailed resolution was passed which set up a complete procedure for administering the fund. By the time the latter resolution was adopted, this suit seeking to declare the act and proceedings invalid had been filed during February, 1968.

"The gravaman of the challenge thus made is that the legislature said the board may adopt a plan—therefore, unless the board as a condition precedent had adopted a plan, it could not proceed in any other respect, and that whatever had been collected was invalidly collected. The answer to this by the State Bar Association is that the sum total of all of the activity with reference to the Client Security Fund by committees and action of the State Bar Association amounted to a plan and approval of it by the State Bar. When the Board of Governors moved under § 5 of the 1967 act to assess the fee it was merely adopting the plan in existence.

"A review of the committee reports adopted at the 1966 and 1967 State Bar conventions indicate that they do constitute, when taken all together, a plan. The statute itself does not say or indicate that the Board of Bar Governors must restate such a plan to adopt it. The resolutions already adopted contained the essentials required by § 3. They were approved by the State Bar, which in its action at the 1967 convention, in the last sentence of the committee report, recognized that detailed rules of procedure might be necessary. This Court agrees that the action of the Board of Governors in setting the $5 assessment at its meeting in November, 1967, amounted to adoption of the plan.

"Even if this were not so, § 5 appears to allow the Board of Governors to make an annual levy to 'maintain a Client Security Fund' independently of the date of adoption of the plan. In other words,

this Court is not of the opinion that the levy had to come after a completed plan was adopted. If it were so intended by the legislature, the law could have been simply framed to say so. It seems sufficient to say that it was not so framed."

Affirmed.