## BOARD OF OVERSEERS OF the BAR

v.

### Freddie F. LEE.[1]

Supreme Judicial Court of Maine.

Argued Nov. 3, 1980.

Decided Nov. 17, 1980.

1. At all prior stages this proceeding bore the title "In re Freddie F. Lee." That was incorrect. Maine Bar Rule 7(e) provides for the filing of an information by the Board of Overseers of the Bar. That Board prosecutes the information. We have, therefore, changed the title of this case to the appropriate style.

Freddie F. Lee (orally), East Baldwin, for plaintiff.

Michael E. Barr (orally), Augusta, for Board of Overseers of the Bar.

Before McKUSICK, C. J., WERNICK, GODFREY, NICHOLS, GLASSMAN, and CARTER, JJ., and DUFRESNE, A. R. J.

2. The Maine Constitution, Art. VI, § 1, provides:

> The judicial power of this State shall be vested in a Supreme Judicial Court, and such other courts as the Legislature shall from time to time establish.

3. Maine Bar Rule 10 was promulgated to take effect November 1, 1978, and provided:

> (a) Every attorney required to register in accordance with these rules, other than those on inactive status pursuant to Rule 6(c) and suspended attorneys, shall pay an annual fee as established by the Court, which shall be paid to the Board with the registration statement required by Rule 6.
>
> (b) Any attorney who fails to pay the fee required under subsection (a) of this rule within 30 days of its due date, shall be subject to a summary notice of suspension by the Board with the same effect as an order of suspension by a justice of the Court. An attorney aggrieved by any action taken by the Board under this section may apply to the Court, with notice to Bar Counsel, for summary relief for good cause shown.
>
> (c) Any attorney suspended under the provisions of subsection (b) above shall, prior to reinstatement, pay all arrears due from the date of his last payment to the date of his request for reinstatement, and shall also pay an additional reinstatement assessment of $75.00 unless excused from such reinstatement assessment by the Board as a result of its determination that to impose the same

NICHOLS, Justice.

In a case novel in this jurisdiction as a challenge to the power vested by our Constitution [2] in the Supreme Judicial Court as one of the three co–equal branches of government, an attorney, Freddie F. Lee, disputes the right of the Supreme Judicial Court by promulgation of the Maine Bar Rules to require every attorney in active practice in our state to pay an annual registration fee to the Board of Overseers of the Bar created thereunder.[3]

The facts of the case are uncontroverted. In 1979 Lee filed a registration statement with the Board, "under protest" as he said, but refused to pay the registration fee of $100 required in 1979 of all active attorneys not under suspension. By letter Lee asserted that he should not be compelled "to join an association" in order to maintain his right to work as a lawyer and that the cost of lawyer discipline should be borne by those lawyers who are disciplined.

would result in a grave injustice under the circumstances.

> (d) The annual fee which shall be payable together with and at the time of initial registration by an attorney, shall be Fifteen Dollars ($15.00) for attorneys admitted to the practice of law in this State but conducting their practice primarily in another jurisdiction, and not maintaining an office here; and at the following rates for attorneys engaging in the practice of law in this state or maintaining an office here: Twenty–Five Dollars ($25.00) for those admitted to the bar of this State or any other jurisdiction for 3 or fewer years as of January 1 of that year; Twenty–Five Dollars ($25.00) for those admitted to the bar of this State or any other jurisdiction for more than 50 years as of such date; and one hundred dollars ($100.00) for all other attorneys.
>
> (e) The fees so paid, pursuant to the foregoing sections, together with any other source of funds made available to the Board, shall be used to defray the costs of attorney registration, disciplinary investigation, hearings and enforcement, expenses of fee arbitrations and for such other purposes as the Board, with the approval of the Court may determine.
>
> (f) The Board shall annually obtain an independent audit by a certified public accountant of the funds entrusted to it and their disposition, and shall file a copy of such audit with the Court.

Upon his failure to pay this fee to the Board of June 1, 1979, Lee's name appeared on a list of attorneys which the Board had summarily suspended for failure to register and pay the registration fee, which list the Executive Secretary of the Board of Overseers of the Bar sent to the various clerks' offices throughout the Maine court system. In August, 1979, the Board was alerted to the fact that Lee had continued to represent clients in court in matters in which he had previously been of counsel, notwithstanding his suspension.[4]

Upon recommendation of its Grievance Commission after hearing, the Board caused to be filed in the Supreme Judicial Court an information seeking the indefinite suspension of Lee from the practice of law. Maine Bar Rule 7(e)(6). At a hearing before a single justice of the Supreme Judicial Court, designated pursuant to Maine Bar Rule 7(e)(6) to hear this information, Lee admitted the factual allegations, and the parties submitted the issues of law to the single justice.

On May 29, 1980, the single justice issued an order, suspending Attorney Lee for non-payment of the registration fee until such time as he shall have paid all arrears required of him, plus the reinstatement assessment required of him pursuant to Maine Bar Rule 10(c). In that order the single justice ruled, however, that the Board of Overseers of the Bar lacked authority to itself summarily suspend an attorney although Maine Bar Rule 10(b) purports to confer that power upon the Board.

In appealing to this Court from that order suspending him from the practice of law, Attorney Lee attacks the pertinent bar rule on constitutional grounds. The Board has brought a cross-appeal, asserting that the Board's ordering of Lee's suspension from practice for non-payment of the registration fee was a ministerial act appropriately delegated to it by the Supreme Judicial Court.

On both the appeal and the cross-appeal we affirm the order of the single justice.

■ The circumstance that before the Supreme Judicial Court, sitting as the Law Court, the Defendant here challenges the constitutionality of a rule promulgated by the Supreme Judicial Court is unusual, but not without precedent. In *State v. Kelly*, Me., 376 A.2d 840, 844 (1977), the Law Court entertained and upheld an attack on the validity of a rule which the Supreme Judicial Court had promulgated. The situation is not dissimilar from a litigant's challenge to an advisory opinion rendered by the justices pursuant to the provisions of our state constitution.[5] It has long been recognized that such an opinion (which is the opinion of individual justices) is without precedential value; the Law Court is not bound by the advisory opinion when the same question may later be raised in a litigated case. *Martin v. Maine Savings Bank*, 154 Me. 259, 269, 147 A.2d 131, 137 (1958).

■ The propriety of a challenge here to the validity of a rule in the promulgation of which certain present members of the Supreme Judicial Court, as rule-makers, may have joined, is in accord with the re-examination of federal rules which in appellate review of litigated matters is permitted in the United States Supreme Court. *Hanna v. Plumer*, 380 U.S. 460, 464, 85 S.Ct. 1136, 1140, 14 L.Ed.2d 8 (1965). *See also* 4 C. Wright & A. Miller, *Federal Practice and Procedure* § 1030 (1969).

■ An analysis of the problem presented by this appeal must begin with recognition that at the foundation of our form of government there are three co-equal branches; and that our form of government, at the state as well as the federal level, embraces the doctrine of the separation of powers. In the Maine Constitution, Article III proclaims:

---

4. In a case of suspension or disbarment, Maine Bar Rule 7(n) makes possible an opportunity for the attorney to wind up for his clients matters pending on the entry date of the order and also provides that the suspended or disbarred attorney shall give prompt notice thereof both to his clients and, if litigation is pending, to the attorneys for adverse parties.

5. Me.Const., Art. VI, § 3.

Section 1. The powers of the government shall be divided into three distinct departments, the legislative, executive and judicial.

Section 2. No person or persons, belonging to one of these departments, shall exercise any of the powers properly belonging to either of the others, except in the cases herein expressly directed or permitted.

Each of the three great "departments" [6] being independent and co–equal,[7] it follows that they are "severally supreme within their legitimate and appropriate sphere of action." *Ex parte Davis*, 41 Me. 38, 53 (1856).

▮▮▮ From this concept of separation of powers there is derived the inherent power of the Supreme Judicial Court. It is a fundamental principle of constitutional law that each department in our tri–partite scheme has, without any express grant, the inherent right to accomplish all objects necessarily within the orbit of that department when not expressly allocated to, or limited by the existence of a similar power in, one of the other departments. The inherent power of the Supreme Judicial Court, therefore, arises from the very fact that it is a court and connotes that which is essential to its existence and functioning as a court.[8] *Petition of Florida State Bar Ass'n*, Fla., 40 So.2d 902, 905–06 (1949); *In re Integration of Nebraska State Bar Ass'n*, 133 Neb. 283, 275 N.W. 265, 114 A.L.R. 151 (1937).[9]

▮▮▮ Attorneys are officers of the court and as such constitute an important part of the judicial system. The power to define and regulate the practice of law naturally and logically belongs to the judicial department. The admission and disbarment of attorneys is the ultimate exercise of that power and is a judicial act. *In re Secombe*, 60 U.S. (19 Howard) 9, 13, 15 L.Ed. 565 (1856); *Laughlin v. Clephane*, 77 F.Supp. 103, 105 (D.D.C.1947).

▮▮▮ The Supreme Judicial Court has inherent power, not only to regulate the conduct of attorneys as officers of the court, but also to impose upon them as a precondition to receipt of a license to practice such registration fees as are reasonably required to enable the Court to carry out its responsibilities.

▮▮▮ The fact that the ultimate power to regulate the conduct of attorneys is inherently in the judicial department[10] does not mean that other departments of government cannot also in some respects act in such an area as this. We note, for example, that the Legislature has conferred upon the attorney general authority to prosecute in the Supreme Judicial Court an attorney charged with conducting himself in a man-

6. Where our constitution refers to the three great departments of government, the reader must be careful to distinguish them from the "departments" or agencies which may from time to time be created within the executive department.

7. The doctrine of separation of powers which the founding fathers made so explicit in our state constitution is only implicit in the federal constitution.

8. Conversely, the judicial department may not interfere with the exercise of power by the executive or legislative departments within its own constitutional sphere. *See Bar Harbor Banking & Trust Company v. Alexander*, Me., 411 A.2d 74, 76 (1980).

9. It is of interest to note that in an opinion of the Maine attorney general, as yet unpublished, dated September 30, 1975, rendered to the commissioner of the department of finance and administration with a copy to the governor, that officer observed that it was "widely held" that courts have an inherent power to order payment of reasonable amounts necessary to perform the judicial function, and he cited the annotation "Inherent Power of Court to Compel Appropriation or Expenditure of Funds for Judicial Purposes." 59 A.L.R.3d 569 (1974).

10. On inherent judicial power *see generally* Jeffers, "Government of the Legal Profession: An Inherent Judicial Power Approach," 9 St. Mary's L.J. 385 (1978); Kalish, "The Nebraska Supreme Court, The Practice of Law and the Regulation of Attorneys," 59 Neb.L.Rev. 555 (1980); Robertson and Buehler, "The Separation of Powers and the Regulation of the Practice of Law in Oregon," 13 Willamette L.J. 273 (1977); Note, "Judicial Financial Autonomy and Inherent Power," 57 Cornell L.Rev. 975 (1972); Note, "The Inherent Power of the Judiciary to Regulate the Practice of Law–A Proposed Delineation," 60 Minn.L.Rev. 783 (1976).

ner unworthy of an attorney. 4 M.R.S.A. §§ 851–856. This authority remains an alternative to the adjudication of attorney disciplinary matters pursuant to the Maine Bar Rules.

In addition, the Legislature has enacted certain statutes relating to the admission and reinstatement of attorneys, which statutes the Supreme Judicial Court honors as a matter of comity, but not in surrender of its inherent power.[11] *Application of Feingold*, Me., 296 A.2d 492, 496 (1972). *See also Barnes v. Walsh*, 145 Me. 107, 110–11, 72 A.2d 813, 815 (1950).

■ The police power is generally considered to be vested in the legislative department, but it is not the exclusive power of that department. The police power may on occasion be exercised by the courts. *Petition of Florida Bar Ass'n, supra*, at 906. The promulgation of Maine Bar Rule 10 is such an occasion.

■ Attorney Lee has challenged our bar rules as violating his constitutional rights to due process and to equal protection of the laws. Me. Const., Art. I, § 6–A; U.S.Const., Amend. XIV. Under our bar rules the offending attorney is accorded both notice and an opportunity to be heard. These are of the essence of due process. *Peaslee v. Pedco, Inc.*, Me., 388 A.2d 103 (1978). *See also Bennett v. Oregon State Bar*, 256 Or. 37, 470 P.2d 945, 53 A.L.R.3d 1291 (1970).

In *Buschbacher v. Supreme Court of Ohio*, No. C–2–75–743, 75–751, 76–309 (S.D. Ohio 1976), *aff'd sub nom. Cuyahoga County Bar Ass'n, et al. v. Supreme Court of Ohio*, 430 U.S. 901, 97 S.Ct. 1167, 51 L.Ed.2d 577 (1977), the United States Supreme Court upheld the constitutionality of a rule of the Ohio court which required practicing attorneys to register and pay a biennial fee in the face of charges of violation of procedural due process, substantive due process and equal protection of the laws.

In Tennessee a court rule providing for annual registration of attorneys and payment by them of an annual license fee has withstood a challenge on grounds of denial of the constitutional guarantees of due process and equal protection. *Ables v. Fones*, 587 F.2d 850 (6th Cir. 1978).

■ Attorney Lee has presented no evidence whatsoever that the classification of attorneys made in Maine Bar Rule 10 for fixing the amount of the annual registration fee is an arbitrary one. His challenge on that ground, therefore, requires no further attention by this Court.

■ In his challenge to Maine Bar Rule 10 Attorney Lee goes further than the constitutional issues discussed above and urges that the rule promulgated by the Supreme Judicial Court offends as well the following provisions of our state constitution:

No tax or duty shall be imposed without the consent of the people or of their representatives in the Legislature. Me. Const., Art. I, § 22.

Bills, orders or resolutions, may originate in either House, and may be altered, amended or rejected in the other; but all bills for raising a revenue shall originate

---

11. The doctrine of inherent judicial power has found application in a variety of areas related to the judicial process. There have been instances in which state courts have had to resort to their inherent power to compel allocation of public funds to the judicial department. *Judges for Third Judicial Circuit v. County of Wayne*, 386 Mich. 1, 190 N.W.2d 228, 230 (1971).

Under this doctrine it has been recognized that courts have even broader power to administer funds than to compel initial judicial financing. In Washington that state's Supreme Court has extended to the unified bar the court's power to administer its funds without legislative or executive interference. *Matter of Washington State Bar Ass'n*, 86 Wash.2d 624, 548 P.2d 310, 316 (1976), and in Minnesota a statute was invalidated that provided that all attorney registration fees be removed from their restricted account and be placed in the general fund. *Sharood v. Hatfield*, 296 Minn. 416, 210 N.W.2d 275, 282 (1973).

The Oregon court also has invoked the doctrine of inherent judicial power in the area of court procedure when it struck down as an undue burden on the judiciary a new statute relating to the removal of a judge from a particular case. *State ex rel. Bushman v. Vandenberg*, 203 Or. 326, 337–38, 280 P.2d 344, 348 (1955).

in the House of Representatives, but the Senate may propose amendments as in other cases: provided, that they shall not, under color of amendment, introduce any new matter, which does not relate to raising a revenue. Me. Const., Art. IV, Part 3, § 9.

The Legislature shall never, in any manner, suspend or surrender the power of taxation. Me. Const., Art. IX, § 9.

Maine Bar Rule 10 is not a bill for imposing a tax or for raising a revenue. It imposes upon attorneys a registration fee, which under subdivision (e) of that rule is to be used to defray the costs of attorney registration, disciplinary investigation, hearing and enforcement, expenses of fee arbitrations and for such other purposes as the Board with the approval of the Court may determine.

A tax, as our Court observed more than a century ago, is a charge either to raise money for public purposes or to accomplish some governmental end. *Brewer Brick Co. v. Brewer*, 62 Me. 62, 70 (1873). When the exactions, however, are not imposed for the main purpose of revenue, but are imposed in the exercise of a police power and as part of a program for the regulation of a particular business, occupation or profession, the levies are license fees and not taxes. *Utter v. State*, 571 S.W.2d 934, 937 (Tex.Cr.App., 1978); *Pittsburgh Milk Co. v. City of Pittsburgh*, 360 Pa. 360, 62 A.2d 49, 52 (1948); *Brackman v. Kruse*, 122 Mont. 91, 199 P.2d 971, 977 (1948); *City of Coos Bay v. Aerie No. 538 of Fraternal Order of Eagles*, 179 Or. 83, 170 P.2d 389, 396 (1946).

The common distinction between taxes and license fees is that taxes are primarily intended to raise revenue while license fees are part of a regulatory program and are intended to cover costs of administering such a program under the police power of government. *City of Philadelphia v. Southeastern Pennsylvania Transportation Authority*, 8 Pa.Cmwlth. 280, 287, 303 A.2d 247, 251 (1973). The test is the purpose of the assessment and not its effect. *Beckendorff v. Harris–Galveston Coastal Subsidence District*, 558 S.W.2d 75, 79 (Tex.Civ.App., 1977).

When the Delaware court provided by rule a clients' security fund and required lawyers to make a stated contribution to that fund, the rule was challenged as the levying of a tax. That court replied:

The short answer to this contention is that the payment required is an assessment and not a tax. We have held that we have the power to order the creation of the Fund and, that being so, it necessarily follows that we have the power to direct the imposition of a reasonable assessment to accomplish the purpose. *In re Member of Bar*, Del.Supr., 257 A.2d 382, 385 (1969); *app. den. sub nom. Re Reed*, 396 U.S. 274 [, 90 S.Ct. 562, 24 L.Ed.2d 464] (1970).

This appeal presents an issue which is resolved by thus defining the distinction between a tax and a license fee. We see no reason for using any other definition in the case at bar.

The power to regulate the practice of law carries with it the power to impose a charge upon attorneys to fund such regulation. *Petition of Florida Bar Ass'n, supra*, at 906–07.

When in Mississippi a similar challenge was mounted against an annual assessment against every member of the bar in that state, it was held that this levy was a proper one, because the court was vested with inherent disciplinary jurisdiction, and it was further held that the funds thus provided might properly be deposited in a special account and used exclusively for the disciplinary activities and agencies. *Matter of Mississippi State Bar*, 361 So.2d 503, 506 (Miss.1978).

We conclude that the disciplinary action taken against this attorney does not offend any provision of either the Maine Constitution or the United States Constitution.

There remains the issue raised by the cross–appeal of the Board of Overseers of the Bar.

A century ago this Court observed that the power of removal from one's office as an attorney and counselor at law was a judicial power, to be exercised by a sound judicial discretion. *Sanborn v. Kimball*, 64 Me. 140, 147 (1875).[12]

We have had occasion, however, when the act was a ministerial one, as distinguished from a judicial act, to recognize that such a responsibility could be delegated.

Illustratively, M.R.Civ.P. 58 directs that where a party recovers only money damages, or nothing at all, after the pronouncement of that judgment (which is a judicial act), the clerk shall enter that judgment forthwith on the docket (which is a ministerial act). *See Weedon v. Gaden*, 419 F.2d 303, 306 (D.C.Cir.1969).

Similarly, under M.R.Civ.P. 55 the clerk is authorized to enter a default when it is evident that a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend; and when the claim is for a sum certain or for a sum which by computation can be made certain the clerk is authorized to enter judgment by default. Here, too, the function of the clerk is purely ministerial. *Downing v. O'Brien*, Me., 325 A.2d 526, 527 (1974).

The rule–makers could have made the suspension an automatic one and delegated to an agent the ministerial task of suspending an attorney who failed to make the payment of the registration fee required of him. The difficulty with the present Maine Bar Rule 10(b) is that by using the words "subject to" the rule–makers have left ambiguous whether or not the Board of Overseers of the Bar was to exercise a judicial discretion in deciding in a given case whether the attorney was to be suspended. This was inappropriate.

 The single justice found the purported suspension by the Board to be invalid.[13] We agree for the reason to which we have just adverted. He correctly acted

himself to suspend Attorney Lee for failure to pay the validly prescribed registration fee for Maine attorneys. By the express terms of that order Attorney Lee can at any time terminate his suspension by paying all arrears in payment of the registration fee and the $75 reinstatement fee as required of him by Maine Bar Rule 10(c).

The entry will be:

Appeal denied.

Judgment affirmed.

No costs allowed to either party.

All concurring.

---

**12.** *See also Ex parte Burr*, 22 U.S. (9 Wheat.) 529, 530, 6 L.Ed. 152 (1824).

**13.** Since the attorney's suspension was invalid, he could not be the subject of discipline for practicing law in June and July, 1979.